AXELSON, INC., et al., Relators,

v.

The Honorable Grainger W. McILHANY, Judge, Respondent.

No. C–7774.

Supreme Court of Texas.

Oct. 24, 1990.

Robert L. Templeton, John Smithee, Joe L. Lovell, Amarillo, for Axelson.

Jess H. Hall, Jr., Jack O'Neill, Houston, H. Carter Burdette, Fort Worth, S. Tom Morris, Amarillo, R. Scott Hogarty, Bonnie J. White, James R. Snell, Houston, for respondent.

## OPINION

GONZALEZ, Justice.

In this mandamus proceeding, we are asked to direct Judge McIlhany to vacate orders denying pretrial discovery. The court of appeals conditionally granted the petition for writ of mandamus on certain points but denied the petition on other points. 755 S.W.2d 170. Among other things, we are requested to grant relief regarding discovery of a kickback investigation and "dual capacity" witnesses. We conditionally grant the writ.

The underlying suit from which this action arises involves what is believed to be the largest gas well blowout in United

States history. Key Well 1–11, located in Wheeler County, blew out in October 1981 and was not brought under control for over a year. Apache Corporation operates the well and, together with El Paso Exploration Company (a/k/a Meridian Oil Production, Inc.), owns the working interest. Numerous lawsuits involving over 100 parties have been filed against Apache and El Paso, alleging that their wrongful acts caused the blowout. All suits against Apache and El Paso have been consolidated.

Plaintiffs include Arkla Exploration, Stephens Production Company and Hobart Key, all of whom own mineral interests in the same field. Tom L. Scott, Inc. and other mineral interest holders ("Scott group")[1] intervened as plaintiffs, alleging a cause of action against Apache and El Paso only. Apache and El Paso responded by adding numerous third-party defendants. Sooner Pipe & Supply Corporation, Hydril Corporation and Babcock & Wilcox Company ("Sooner") were added because they supplied well equipment that allegedly caused the blowout. Axelson, Inc. and its parent corporation, U.S. Industries, Inc. (USI), were added because Axelson manufactured a relief valve that allegedly should have prevented the blowout. Axelson and USI are the relators herein and ask that we set aside the trial court's order denying[2]:

(1) discovery of documents reflecting Apache's internal investigation of kickback schemes at the well site;

(2) depositions from dual capacity witnesses (those witnesses who were active participants in the Key Well 1–11 operations or support and were later designated consulting-only experts);

(3) depositions of six experts originally designated as **testifying** experts by parties who have settled with Apache and El Paso and who were later redesignated as **consulting-only** experts;[3] and

(4) depositions of persons who performed gas analyses at Apache's request.

We will now separately address each of the discovery requests made by Axelson and USI.

### KICKBACK INVESTIGATION

For purposes unrelated to this lawsuit, Apache conducted an internal investigation concerning bribes and kickbacks from suppliers and contractors on a number of wells in western Oklahoma and Texas Panhandle fields. Illegal drug use and prostitution on the job site were also investigated. According to testimony by Apache's general counsel, wells in Oklahoma were the primary focus of the investigation, but Key Well 1–11 and the subsequent Key wells were included. Axelson and USI have tried unsuccessfully to obtain discovery of this investigation.[4] Apache and El Paso resist

1. The Scott group consists of Tom L. Scott, Inc., George Johnson, Sunshine Exploration Co., W.W. Braden, III and Canyon Energy, Inc.

2. Apache and El Paso urge us to deny the petition for writ of mandamus because Axelson and USI are coming to court with unclean hands. Specifically, Axelson and USI have entered into an agreement with the Scott group whereby Axelson is now paying all legal expenses incurred by the Scott group. In return, the Scott group is to prosecute its case against Apache and El Paso with diligence and is not to withdraw or settle the case without permission from Axelson.

 Mandamus is a legal remedy, but it is governed to some extent by equitable principles. Nonetheless, the doctrine of unclean hands has been used to deny issuance of the writ. *Industrial Found. of the South v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 674 (Tex.1976); *Westerman v. Mims*, 227 S.W. 178, 181–82 (Tex. 1921, orig. proceeding); *see also Turner v. Fisher*, 222 U.S. 204, 209, 32 S.Ct. 37, 37, 56 L.Ed.

165 (1911). Here, the agreement to pay legal expenses is completely unrelated to this discovery mandamus. Thus, the doctrine does not apply here and we need not decide whether this agreement constitutes unclean hands because it does not relate in any way to relators' entitlement to relief. *See Grohn v. Marquardt*, 657 S.W.2d 851, 855 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.).

3. This issue is dealt with in the companion case of *Scott v. McIlhany*, 798 S.W.2d 556 (Tex.1990, orig. proceeding). In that case we held that agreements to silence testifying experts by redesignation as consulting-only experts pursuant to a settlement violate the purpose and policy underlying the rules of discovery. *Jampole v. Touchy*, 673 S.W.2d 569 (Tex.1984, orig. proceeding).

4. According to Apache's general counsel, the investigation results were not compiled into a single report. Instead, the general counsel re-

discovery on the grounds of relevance, attorney-client privilege, attorney work product exemption, and the party communications exemption. The trial court did not conduct an in camera inspection of the investigation results. Instead, the court heard testimony from Apache's general counsel regarding Apache's grounds for resisting discovery of any part of the investigation results. Ultimately, the trial court denied discovery on the basis of relevance, and the court of appeals upheld the denial on this ground. 755 S.W.2d at 178.

 Generally, discovery is permitted into any matter, not privileged, that is relevant to the subject matter and is "reasonably calculated to lead to the discovery of admissible evidence."[5] TEX.R.CIV.P. 166b(2)(a); *see also Lindsey v. O'Neill*, 689 S.W.2d 400, 402 (Tex.1985, orig. proceeding) (per curiam); *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex.1984, orig. proceeding). This broad grant, however, is limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information. *Jampole*, 673 S.W.2d at 573. Thus the trial court has discretion to narrow the scope of discovery on a case by case basis with a protective order. TEX.R. CIV.P. 166b(5).

 The "relevant to the subject matter" and "reasonably calculated to lead to admissible evidence" tests are liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial. *Gutierrez v. Dallas Indep. School Dist.*, 729 S.W.2d 691, 693 (Tex.

1987). It does not matter that the information sought may be inadmissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence. TEX. R.CIV.P. 166b(2)(a). Among other reasons, Apache conducted the investigation to determine whether the kickbacks and bribes affected the quality of equipment used. This information might reasonably lead to evidence that Apache's conduct, or that of its suppliers, was a contributing cause of the blowout. Apache also investigated whether this conduct had an inflationary effect on the drilling costs. Since Apache is seeking drilling costs in its suit against Axelson, to be able to defend against these costs, Axelson must be permitted to determine whether they were reasonable. Therefore, portions of the kickback investigation may well be relevant to Axelson's case. Furthermore, Apache's attorney testified that the scope of the investigation included Key Well 1–11, the subsequent Key wells and all suppliers to Apache wells during the time covered by the investigation. The trial court abused its discretion in denying discovery of the investigation results sight unseen. The trial court should have conducted an in camera inspection to determine if any of the kickback investigation was relevant to the subject matter of the litigation and, if it was, whether any part of the investigation is reasonably calculated to lead to the discovery of admissible evidence.[6]

 Apache also resists discovery based on the attorney-client privilege under

ceived and reviewed all copies of witness statements and investigators' reports of individual interviews. Apache allegedly kept these reports confidential except for results disclosed in an Oklahoma case brought by a former supplier, White Stripe Pipe Inspection. White Stripe sued Apache for $85,000 on an unpaid account. Apache counterclaimed alleging that White Stripe had paid kickbacks to Apache employees. The jury awarded Apache $200,000 in compensatory damages and $200,000 in punitive damages.

5. Rule 166b(2)(a) provides, in pertinent part:
 Parties may obtain discovery regarding any matter which is relevant to the subject matter in the pending action.... It is not ground for

objection that the information sought will be inadmissible ... if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

6. Because Apache and El Paso object to discovery requests, they have the burden of proving that the documents are privileged or otherwise not subject to discovery. They also have the burden to segregate the items or documents which they allege are exempt from discovery and produce the discovery to the court in a sealed wrapper for in camera inspection, so that the trial court can make a ruling on discovery after examining the documents. *See* TEX.R. CIV.P. 166b(4); *McKinney v. National Union Fire Ins. Co.*, 772 S.W.2d 72 (Tex.1989).

Texas Rule of Civil Evidence 503(b) [7] and the work product privilege under Texas Rule of Civil Procedure 166b(3). Since there was evidence that the investigation was disclosed to the FBI, IRS, and the *Wall Street Journal*, the court of appeals properly held that these privileges had been waived. TEX.R.CIV.EVID. 511. Nor does the party communications privilege apply, because the record shows that these documents were not prepared in anticipation of the litigation in which discovery of the communication was sought.

### "DUAL CAPACITY" WITNESSES

Several potential witnesses in this case maintain a dual capacity—possessing first-hand knowledge of relevant facts and serving as consulting-only experts for Apache and El Paso. One of these persons, Paul Douglas Storts, is the petroleum engineer who has been in charge of the well from its inception. He also spearheaded the effort to bring the well under control after the blowout. The others include Richard Biel, Joe Fowler and Tom Hill, who were hired by Apache and El Paso to examine the wellhead equipment and have specific knowledge concerning the chain of custody of the wellhead equipment.

Axelson and USI seek to discover all facts known by Storts and his mental impressions and opinions gained while working on the well and consulting. They seek to discover only chain of custody facts from Biel, Fowler and Hill.

The trial court entered several orders from December 1984 through July 1987 limiting discovery. With regard to Storts, the trial court initially quashed his deposition, but later determined that information gained by him while working on the well was discoverable, but that information he gained while doing a combination of working on the well and consulting was not

discoverable. With regard to Biel, Fowler, and Hill, the trial court allowed discovery of facts relating only to the Axelson valve. The court of appeals held that the trial court had not abused its discretion and disallowed all other discovery from these experts. 755 S.W.2d at 176–77. We disagree.

■ The factual knowledge and opinions acquired by an individual who is an expert and an active participant in the events material to the lawsuit are discoverable. This information is not shielded from discovery by merely changing the designation of a person with knowledge of relevant facts to a "consulting-only expert."

■ The scope of discovery regarding experts who serve in the dual capacity of fact witness and consulting-only expert has not been addressed thoroughly by Texas courts. Barrow and Henderson, *1984 Amendments to the Texas Rules of Civil Procedure Affecting Discovery*, 15 ST. MARY'S L.J. 713, 729 (1984). The literal text of the exemption, however, resolves the issue presented in this mandamus. The consulting expert exemption protects the identity, mental impressions and opinions of consulting-only experts; but not the facts.[8] The rule we announce today, however, "should not extend to consulting [only] experts ... whose only source of factual information was the consultation." *Id.* In other words, persons who gain factual information by virtue of their involvement relating to the incident or transaction giving rise to the litigation do not qualify as consulting-only experts because the consultation is not their only source of information. We now separately address Axelson's discovery requests regarding Storts, an employee designated as a consulting-only expert, and Biel, Fowler and Hill, experts designated as consulting-only who

---

7. "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications" made between the client and attorney (or their respective representatives) which were "made for the purpose of facilitating rendition of legal services to the client." TEX.R.CIV.EVID. 503. The attorney-client privilege belongs solely to the client.

8. The consulting expert exemption has its genesis in the attorney work product privilege, which protects only the mental impressions, opinions, and conclusions of the lawyer and not the facts. D. KELTNER, TEXAS DISCOVERY § 3:93 (1989).

have factual knowledge of the well equipment.

### Storts

■■■ An employee may be specially employed as a consulting-only expert. *See Barker v. Dunham*, 551 S.W.2d 41, 43–44 (Tex.1977, orig. proceeding). Nevertheless, all employees do not necessarily qualify as "consulting-only" experts. The rules provide requirements that a consulting-only expert must meet. *See* TEX.R.CIV.P. 166b(3)(b). Rule of Civil Procedure 166b(3)(b) provides:

> 3. **Exemptions.** The following matters are protected from disclosure by privilege:
>
> b. *Experts.* The identity, mental impressions, and opinions of an expert who has been *informally consulted* or of an expert who has been *retained or specially employed by another party in anticipation of litigation or preparation for trial* ...

*Id.* (emphasis added). Under this rule, a consulting-only expert must be informally consulted or retained or specially employed in anticipation of litigation. An employee who was employed in an area that becomes the subject of litigation can never qualify as a consulting-only expert because the employment was not in anticipation of litigation. On the other hand, an employee who was not employed in an area that becomes the subject of litigation and is reassigned specifically to assist the employer in anticipation of litigation arising out of the incident or in preparation for trial may qualify as a "consulting-only" expert. In any event, a party may discover facts known by an employee acting as a "consulting-only" expert.

■■■ In this case, evidence presented to the trial court suggested that Storts was doing a combination of both working on the well and consulting. Storts was hired to work as a petroleum engineer and he worked on Key Well 1–11 before, during and after the blowout. After litigation began Apache asserted that Storts was a consulting-only expert and resisted all discovery of Storts' mental impressions, opin-

ions and facts. On the record before him, the trial judge abused his discretion in denying discovery of Storts' mental impressions, opinions and facts because Storts did not qualify as a consulting-only expert.

Policies previously enunciated by this court support the decision we reach today. This rule aims to effectuate the ultimate purpose of discovery, which is to seek truth, so that disputes may be decided by those facts that are revealed, rather than concealed. *Jampole*, 673 S.W.2d at 573. Additionally, although Apache and El Paso are defendants in this case, they are pursuing a cross claim and "cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence around the facts of the case." *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex.1985, orig. proceeding).

### Biel, Fowler, & Hill

■■■ Axelson sought only factual discovery from Biel, Fowler and Hill regarding the condition of wellhead equipment in addition to the condition of Axelson's relief valve. The trial judge limited the scope of discovery from these consulting-only experts to the Axelson valve. The trial judge abused his discretion in refusing discovery of these facts because the exemption for consulting-only experts does not extend to facts known to them.

### DEPOSITION OF JACK CHISUM

■■■ The final request made by Axelson and USI is that they be allowed to depose another expert, Jack Chisum. He performed gas analyses on the well immediately after the blowout to determine the elemental content of the gas. Certain chemicals, such as hydrogen sulfide, could have caused stress cracks in the well casing that, in turn, could have caused the blowout, according to Axelson and USI. Axelson and USI took Chisum's deposition. He testified regarding tests done for Apache prior to the blowout, but he refused to testify regarding tests performed subsequent to the blowout because he was hired at the direction of Apache's attorney. Evidence suggests Chisum's tests were done

at the direction of Robert Grace, who has been designated as a testifying expert by Apache and El Paso. However, the trial court denied all discovery from Chisum relating to tests conducted after the blowout.

Axelson and USI sought mandamus from the court of appeals and requested production of the tests. Apache and El Paso resisted discovery, claiming the party communication exemption, the attorney work product exemption, and the consulting-only expert exemption. The court of appeals found that they were discoverable. Specifically, the court of appeals determined that because the tests were done by or at the direction of Grace, the testifying expert, they were discoverable. The court of appeals did not rule on whether Chisum could be deposed regarding the tests. After the court of appeals rendered its decision and after the tests had been disclosed, Axelson and USI noticed and subpoenaed Chisum for deposition. Apache and El Paso filed a motion to quash contending that Chisum is a consulting-only expert. The deposition never took place and was presented to this court by means of a supplemental mandamus point to this mandamus proceeding.

Since the court of appeals' decision was handed down, the trial court has not acted on whether Chisum may be deposed. He may be waiting for a decision from us on this mandamus proceeding. The parties have taken no other action in the trial court or the court of appeals and, instead, have brought this problem to our attention in a supplemental mandamus point. In order for mandamus to lie regarding this point, the respondent, Judge McIlhany, must have refused to act; that is, he must have explicitly denied motions intended to compel the deposition of Chisum. *See Doctors Hosp. v. Fifth Court of Appeals*, 750 S.W.2d 177, 178 (Tex.1988, orig. proceeding); *Hursey v. Bond*, 172 S.W.2d 305, 306, 172 S.W.2d 305 (Tex. Comm'n App.1943,

opinion adopted, orig. proceeding); Axelson and USI cannot point to an order of the trial court refusing their most recent request to depose Chisum. *See* Tex.R.App.P. 121. Without such a refusal by the trial judge, mandamus on this point is improper.[9] However, the principles we announce today should guide the trial court in deciding this issue.

## CONCLUSION

We hold that the trial judge abused his discretion by refusing discovery of the kickback investigation without conducting an in camera inspection; denying the request to depose the six experts redesignated as consulting-only experts; denying discovery of a witness who does not qualify as a consulting-only expert; and denying discovery of facts known by consulting experts. We are confident Judge McIlhany will vacate his orders denying this discovery and will enter orders consistent with this opinion. Should he fail to do so, the clerk of the supreme court is directed to issue the writ of mandamus.

---

**9.** Discovery conducted while this case has been pending before the appellate courts, coupled with rule changes, might subject other experts' mental impressions and opinions to discovery. The rules have been amended, effective September 1, 1990, to allow discovery of a consulting-only expert's work product, mental impressions

and opinions, if his opinions or impressions have been reviewed by a testifying expert. Because this evidence and these rule changes were not before the trial court, they do not form a basis for us to find that the trial court abused its discretion in this mandamus proceeding.