Rubin S. MARTIN, III and East Texans Against Lawsuit Abuse, Inc., Relators,

v.

The Honorable Alvin KHOURY, 124th District Court, Gregg County, Texas, Respondent.

No. 6–92–115–CV.

Court of Appeals of Texas, Texarkana.

Nov. 10, 1992.

Charles Clark, Law Offices of Charles H. Clark, Tyler, for relators.

Glenn A. Perry, Hill, Perry & Sloan, Longview, for Real Parties in Interest, Laurel and John Kinsel.

Michael Hummert, Dallas, for Real Party in Interest, Tim Doptis.

Thomas Buchanan, Cowles & Thompson, Tyler, for Real Party in Interest, Skaggs Alpha Beta, Inc.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

This petition for writ of mandamus was brought by Rubin S. Martin, III, individually and as president of East Texans Against Lawsuit Abuse, Inc. (ETALA), asking this Court to order the trial judge to quash a subpoena duces tecum. The court order of which Martin complains requires him to produce for in camera inspection the current membership list of ETALA and the

names and addresses of individuals, households, or business entities that have made financial contributions to ETALA since its incorporation.[1]

The unusual nature of this mandamus is shown by the fact that neither Martin nor ETALA is a party to the lawsuit underlying the order to produce and also by counsel's admission that the documents sought are neither relevant to the subject matter of the underlying suit nor reasonably calculated to lead to the discovery of such evidence. The underlying action is a slip-and-fall case brought by Laurel and John Kinsel (Kinsels) against Skaggs Alpha Beta and Tom Doptis d/b/a The Roof Source.

ETALA is a nonprofit organization that was created for the purpose of influencing public opinion against frivolous lawsuits.[2] The Kinsels argue that ETALA's advertising efforts and direct mail activities have created an atmosphere in which jurors are likely to be tainted and unwilling to provide appropriate verdicts in nonfrivolous personal injury lawsuits. They contend that the documents are relevant to the subject matter of their voir dire and that production of the documents would better inform the court about the likely make-up of the jury panel and its exposure to influence exercised by ETALA. The Kinsels argue that the contributor and membership rolls should be provided to the trial judge so that he might examine those rolls and determine whether or not additional time should be provided on voir dire to allow the Kinsels to more fully explore the possibility of juror bias in this matter.

■ Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion or, in the absence of another adequate remedy, when the trial court fails to observe a mandatory statutory provision conferring a right or forbidding a particular action. *Abor v. Black*, 695 S.W.2d 564, 567 (Tex.1985).

■ We shall look first to whether Martin and ETALA have another adequate remedy. They are not parties to this action and therefore could not appeal from a judgment in the case. No other adequate remedy has been suggested, and we are not aware of any other method whereby Martin and ETALA could protect their interests.

■ With respect to resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of

---

1. The subpoena duces tecum sought information in addition to that ordered by the court, including all documents evidencing the creation of ETALA (some of which appear in the record), a copy of all documents that have been mailed by ETALA in the last twelve months and a list of the addresses of all individuals, households, or business entities to whom these documents have been mailed, transcripts of all television commercials sponsored by ETALA during the last twelve months, all press releases which have been released by ETALA in the last twelve months, all newspaper advertisements run in Gregg County by ETALA within the last twelve months, documents listing the names, addresses, and telephone numbers of any person who has called the 1–800 telephone number listed on the billboard sponsored by ETALA in Gregg County, the schedule of when the television spots sponsored by ETALA have been aired in the last twelve months, transcripts of radio advertisements run in Gregg County in the last twelve months that have been sponsored by ETALA, and all surveys taken during the last twelve months of Gregg County residents by ETALA, including the survey results. The court granted discovery only on the membership list and contributor list.

2. According to the Articles of Incorporation, the purposes of this nonprofit corporation is set forth as follows:

The purposes for which the corporation is organized are: Because of the large number of lawsuits filed and excessive damages awarded in the recent past, Texas has drawn national attention as being among the worst states in the United States within which a business can operate, due in large part to the negative climate created by the excessive damage awards against business entities. In an effort to seek a solution to this problem, EAST TEXANS AGAINST LAWSUIT ABUSE desires to inform the citizens of East Texas as to the damages that are caused by lawsuit abuse to business and to the economy in general in this area.

The corporation will attempt to accomplish its purposes through the spreading of information to the public through the public news media, by word of mouth and other means as to the seriousness of the problem and to educate the citizens of the area as to the loss of jobs, increased costs to consumers, increased medical costs and loss of availability of services that may result from the filing and prosecution of frivolous litigation.

the trial court. The relator must establish that the trial court could reasonably have reached only one decision. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). Review of a trial court's determination of legal principles controlling its ruling applies a much less deferential standard, since a trial court has no discretion in determining what the law is or applying the law to the facts. Thus, a failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal through mandamus. *Walker*, at 840. The Kinsels' argument is grounded upon the proposition that all documents, no matter what their relevance to the suit, are discoverable unless some privilege against discovery is promptly raised and supported by evidence.

■ Discovery is generally permitted into any matter, not privileged, that is relevant to the subject matter of the suit, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, so long as it appears reasonably calculated to lead to the discovery of admissible evidence. TEX.R.CIV.P. 166b(2)(a). Discovery is not limited to information that will be admissible at trial if the information is reasonably calculated to lead to the discovery of admissible evidence. *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550 (Tex.1990). Although TEX. R.CIV.P. 177, entitled "Form of Subpoena" and TEX.R.CIV.P. 177a, entitled "Subpoena for Production of Documentary Evidence," do not specify that the document sought must be relevant to the subject matter of the suit, these rules cannot be read in a vacuum. TEX.R.CIV.P. 201(2) specifies that whenever a witness is compelled by subpoena duces tecum to produce, the proper scope of that production is governed by Rule 166b. Therefore, the initial question that must be answered before any discovery may take place is whether the item for which discovery is sought is relevant to the subject matter of the lawsuit or is reasonably calculated to lead to the discovery of admissible evidence. In the present case, we have no allegation that such relevance could potentially exist. Without that initial showing of relevance, discovery is improper.

■ Counsel argues that this reading of the rule is inadequate to protect his client's right to trial by jury and that he needs to be able to obtain this evidence in order to obtain a fair and impartial jury through an extended voir dire proceeding. Counsel contends that the information is relevant to his effort to provide the trial judge with adequate information about this organization so that he will be allowed additional time on voir dire and an opportunity to question perspective jurors whose names appear on one of the produced lists, individually and outside the presence of the other members of the jury panel. Counsel suggests that this procedure is analogous to the issues of a venue hearing in which the trial court must determine if a fair and impartial jury can be chosen in that county. Reasonable relevant discovery on a motion to transfer venue is permitted under TEX. R.CIV.P. 258. That rule is limited to motions to transfer venue.

The information sought here is not the type of information that is generally subject to discovery by subpoenaing the records of an organization. In jury selections, the potential jurors are often asked about whether they have ever been involved with certain occupations, organizations, medical treatments, and such other background information that the attorneys believe will help them in the jury selection process. This information is generally obtained by a showing of hands. After this information is obtained, the trial court has discretion as to whether these potential jurors should be examined individually outside the presence of the other panel members. We know of no case where outside records concerning jurors were subpoenaed in order to ascertain this information. There is no showing in the present case that the trial judge would not have allowed the requested voir dire procedure without the information to be obtained by the subpoena duces tecum. Until a party has demonstrated that this information cannot be obtained by the voir dire of the jury panel, discovery should not be extended in order to acquire such infor-

mation. Permitting counsel to obtain any material from any person, regardless of whether that person was a party or whether that information was relevant to the suit in progress, creates an open invitation to enter the realm of chaos.

In opposing this discovery, Martin contends that such a request is an unconstitutional invasion of the right to association. He cites as authority for his position the case of *Bates v. Little Rock*, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). In that case, a city ordinance required the submission of a list of the names of all members of any organization operating within the city. The local chapters of the NAACP refused to comply, and the defendants were convicted of that violation. The Supreme Court reversed, holding that municipalities had to demonstrate a controlling justification for the deterrents to free association which compulsory disclosure of the membership list would cause. The lists which the NAACP refused to disclose were the membership rolls and a list of contributors.

The Court held that:

[I]t is now beyond dispute that freedom of association for the purpose of advancing ideas and airing grievances is protected by the Due Process Clause of the Fourteenth Amendment from invasion by the States....

   Freedoms such as these are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference.... "It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute [an] effective ... restraint on freedom of association.... This Court has recognized the vital relationship between freedom to associate and privacy in one's associations.... Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association...."

*Bates*, 361 U.S. at 523, 80 S.Ct. at 416, 4 L.Ed.2d at 485, *quoting National Asso. for Advancement of Colored People v. Alabama*, 357 U.S. 449, at 462, 78 S.Ct. 1163, at 1171–72, 2 L.Ed.2d 1488 (1958). The Court continued by stating that a governmental entity must demonstrate a controlling justification for the deterrence of free association which compulsory disclosure of the membership lists would cause.

In the present case, we do not find a controlling justification that would support an infringement upon the First Amendment rights of the organization or the individuals whose names were sought. In the proper case, if it were shown that an organization was attempting to disrupt the trial process by illegal means and was encouraging deceptive practices at the voir dire stage of the trial, the inherent powers of the trial judge would allow such measures as were necessary to prevent the thwarting of the jury process. There is no showing that any such activities have taken place, are contemplated, or in any way are likely to happen. There has been no allegation or showing in the present case that the members of the organization in question were going beyond their constitutionally protected right of free speech. We find that the order rendered by the trial judge was procedurally unsound and constitutionally infirm. This constitutes an abuse of discretion.

The petition for writ of mandamus is conditionally granted, and the trial judge is directed to withdraw his order of production. A formal writ will issue only if the trial judge fails to comply with the requirements of this opinion. Because of the nature of this action, all costs of the underlying hearing, as well as the present original proceeding in this Court, are adjudged against the Kinsels.