IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0613
════════════
 
In re Bexar County Criminal 
District Attorney’s Office, Relator
 
 
════════════════════════════════════════════════════
On Petition for Writ of Mandamus
════════════════════════════════════════════════════
 
 
Argued September 
28, 2006
 
 
Justice Johnson, joined by Chief Justice Jefferson and Justice Medina, dissenting.
 
The trial 
court quashed trial subpoenas and granted a protective order shortly before 
trial was scheduled to start in a malicious prosecution case, effectively 
excluding all testimony from current and former employees of the Bexar County 
Criminal District Attorney’s office who participated in prosecuting the 
underlying criminal case. The trial court’s action was based on an unsworn 
“Motion to Quash Trial Subpoenas and For Protective Order” filed by the DA’s 
office and argued by the parties without testimony or evidence. I agree with the 
court of appeals that based on this record the trial court abused its discretion 
in quashing the subpoenas.
The Bexar 
County District Attorney’s office filed its unsworn motion in late February 2005 
in a malicious prosecution suit filed by David and Annette Crudup. The motion 
related that DA investigator Al Larry, assistant DA Sylvia Cavazos, and former 
assistant DA Robert McCabe had been served with subpoenas on behalf of the 
Crudups to give trial testimony in early March in the 166th District Court in 
San Antonio. The motion stated that “The [DA’s] Office objects, on its behalf 
and on behalf of these individuals, to their required appearance and testimony 
based on the work product privilege.” By its motion the DA’s office claimed that 
testimony based on the individuals’ work or by reference to the DA’s records 
should be found privileged; that the mental impressions, opinions, conclusions, 
legal theories and strategies of an attorney and the attorney’s employees which 
were “prepared in anticipation of litigation or for trial” were privileged; and 
that the DA’s entire litigation file was privileged.[1] The motion requested that the 
subpoenas be quashed and a protective order granted. The motion did not mention 
that the DA’s litigation case file had been produced in August 2003 in response 
to a subpoena duces tecum or that an assistant DA had given a deposition 
on written questions at that time to prove the file as a business record. Nor 
did the motion claim that (1) the file had been involuntarily or mistakenly 
disclosed; (2) testimony of the subpoenaed witnesses would not be relevant to 
the civil suit or that the witnesses did not possess knowledge of facts relevant 
to the suit; (3) there had been other instances of DA employees or attorneys 
having been subpoenaed to give testimony in malicious prosecution cases and that 
testifying in such suits was becoming burdensome; or (4) the witnesses’ 
attendance at court in this particular suit would disrupt the work of the DA’s 
office.[2] McCabe, who no longer worked for the 
DA, did not urge that his attendance at court would work a hardship or that he 
needed some accommodation as to the time or date of his attending court.
The Crudups’ 
response asserted, in part, that (1) the subpoenaed individuals were fact 
witnesses based on their having had conversations with real party in interest 
Cindy Blank and testimony about such conversations was not privileged; (2) even 
if some documents in the DA’s file might ordinarily be privileged work product, 
not all documents in the file would be privileged as work product; and (3) the 
DA’s entire file had already been produced in response to a subpoena duces 
tecum, had been on file in the civil case for over a year, and any privilege 
which might otherwise exist as to the contents of the file was waived. A copy of 
the DA’s case file and the written deposition questions and answers proving it 
up were attached to the response. Following a hearing at which no evidence was 
introduced, the trial court quashed the subpoenas.
The DA’s 
argument relies to a significant degree on our opinion in State ex rel. Curry 
v. Walker, 873 S.W.2d 379 (Tex. 1994). The DA cites Walker in support 
of its position that the work-product privilege exempts its entire litigation 
case file from discovery. In Walker a subpoena duces tecum was 
issued for:
 
Any and 
all records, books, papers, documents written memoranda [sic], handwritten 
notes, photographs and videotapes, including but not limited to the entire 
file(s) in your possession or under your custody or control, indictments, arrest 
records, investigation, punishment evidence, forensics, internal correspondence 
and memos regarding the arrest and subsequent conviction of [NAME OF DEFENDANT] 
on September 27, 1993.
 
Id. at 
380.
Before the 
file was produced in Walker the DA moved to quash the subpoena and for a 
protective order. The trial court examined the DA’s files in camera, 
directed that certain documents comprising work product be withheld and directed 
production of the remaining documents, including police reports, court 
documents, photographs, etc. We conditionally granted a writ directing the trial 
court to rescind that part of its order denying the DA’s motion to quash. In 
doing so, we stated:
 
In effect, 
this requires the District Attorney to produce his entire litigation file, 
except for documents involving direct communications. This order is too broad. 
In National Union Fire Insurance Co. v. Valdez, 863 S.W.2d 458, 460 (Tex. 
1993, orig. proceeding), we stated that “[a]n attorney’s litigation file goes to 
the heart of the privileged work area guaranteed by the work product exemption. 
The organization of the file, as well as the decision as to what to include in 
it, necessarily reveals the attorney’s thought processes concerning the 
prosecution or defense of the case.”
 
Id. The 
DA’s reliance on Walker is misplaced.[3]
First, in the 
case before us the file was produced over a year before the DA filed the motion 
to quash. The subpoena duces tecum pursuant to which the Bexar County 
DA’s office produced its file in 2003 required the production of all records 
relating to, and the case file for, the prosecution of David Crudup. The 
testimony of the assistant DA in response to the subpoena was that all the 
requested records had been produced. To the extent that the DA’s work product 
was disclosed by documents, notes, trial preparatory memoranda, organization of 
the case file or in any other way by the file, the privilege was waived long 
before the DA’s motion was filed in February 2005. See Tex. R. Evid. 511(1); Axelson, Inc. 
v. McIlhany, 798 S.W.2d 550, 554 (Tex. 1990).
Second, the 
objects of the DA’s motion to quash were witnesses. The work product privilege 
precludes testimony or discovery as to types of information; it does not make 
persons privileged from testifying. Witnesses are not the same as documents. 
Documents have fixed contents that can be analyzed to determine whether the 
documents and their contents are privileged. But the full knowledge of a witness 
as to facts and matters relevant to claims made in a lawsuit can hardly ever be 
known, and the testimony of a witness is not fixed until after the witness has 
completed testifying. It is only while witnesses are testifying or after they 
have testified that the admissibility or privileged nature of their testimony 
can be determined. Witnesses occasionally are instructed, upon timely and proper 
motion, not to answer certain questions because the questions seek testimony as 
to matters which are privileged or are otherwise inadmissible. But if the 
questions are rephrased the witnesses then may sometimes be allowed to answer. 
Lawyers may be instructed not to ask witnesses about certain matters, such as 
privileged work product, but that does not preclude lawyers from asking, and 
witnesses from testifying about, other matters.[4] For example, testimony as to general 
procedures such as procedures of the DA’s office for intake of criminal 
complaints, processing of those complaints, whether investigation is made into 
the facts of cases before criminal proceedings are instituted, and whether 
contacts are typically made with complaining witnesses before criminal 
proceedings are begun, during the proceedings, or after the proceedings are 
completed would not be work product as to the Crudup prosecution. Yet such 
testimony was encompassed by the DA’s motion and is precluded by the trial 
court’s order.
There is no 
rule that gives an attorney or an attorney’s employees a privilege from being 
called to testify. Texas Rule of Evidence 501 provides that:
 
Except as 
otherwise provided by Constitution, by statute, by these rules, or by other 
rules prescribed pursuant to statutory authority, no person has a privilege 
to:
(1) refuse 
to be a witness;
(2) refuse 
to disclose any matter;
(3) refuse 
to produce any object or writing; or
(4) prevent 
another from being a witness or disclosing any matter or producing any object or 
writing.
 
Privileges are 
addressed in Article V of the Texas Rules of Evidence. The DA’s office does not 
cite a provision of Article V, any rule, or a Constitutional or statutory 
provision which allows its attorneys and employees to be completely exempted 
from attending court or testifying as to facts or relevant matters within their 
knowledge. The DA cites an exemption only for testimony as to one area: work 
product. The work product privilege in our rules of civil procedure allows the 
DA employees to be protected from testifying as to the subject matter of their 
work product and that protection continues past termination of the criminal case 
and applies in a situation such as that before us. Owens-Corning Fiberglass 
Corp. v. Caldwell, 818 S.W.2d 749, 751-52 (Tex. 1991). However, the 
privilege is not a general exemption from being called as a witness. It is 
limited and as relevant here extends to (1) material prepared or mental 
impressions developed in anticipation of litigation or for trial by or for a 
party or a party’s representatives, including the party’s attorneys, 
consultants, employees, or agents; or (2) communications made in anticipation of 
litigation or for trial between a party and the party’s representatives or among 
a party’s representatives, including the party’s attorneys, consultants, 
employees, or agents. See Tex. R. 
Civ. P. 192.5(a). The privilege does not extend to protecting facts the 
attorney or the attorney’s representatives may acquire. Owens-Corning 
Fiberglass Corp., 818 S.W.2d at 750 and n.2; Axelson, 798 S.W.2d at 
554.
In Hickman 
v. Taylor, 329 U.S. 495 (1947), cited by the Court, the United States 
Supreme Court addressed the question of whether either written witness 
statements in possession of, or oral witness statements made to, an attorney in 
the case at bar had to be produced to opposing parties in response to a pretrial 
discovery request. The witness statements being discussed were not made by a 
non-client witness to an attorney in another case, as is the situation with the 
Crudups, nor were the witness statements asserted to be evidence in another 
proceeding. They were witness statements taken by an attorney as part of trial 
preparation in the case in which the discovery was sought. In addressing 
disclosure of any such oral witness statements, the Hickman Court noted 
that:
 
Such 
testimony could not qualify as evidence; and to use it for impeachment or 
corroborative purposes would make the attorney much less an officer of the court 
and much more an ordinary witness. . . . Denial of 
production of this nature does not mean that any material, non-privileged facts 
can be hidden from the petitioner in this case.
 
 
Id. at 
513. In a concurring opinion, Justice Jackson noted that the question of 
depriving a litigant of evidence was not involved:
 
It seems 
clear and long has been recognized that discovery should provide a party access 
to anything that is evidence in his case. It seems equally clear that discovery 
should not nullify the privilege of confidential communication between attorney 
and client. But those principles give us no real assistance here because what is 
being sought is neither evidence nor is it a privileged communication between 
attorney and client.
 
Id. at 
515-16 (Jackson, J., concurring) (citation omitted). As to statements signed or 
written by witnesses, “Such statements are not evidence for the defendant. . . . 
Nor should I think they ordinarily could be evidence for the plaintiff.” 
Id. at 519.
In United 
States v. Nobles, 422 U.S. 225 (1975), the Supreme Court addressed the 
work-product privilege as to an investigator’s report when the investigator was 
called as a witness in the criminal trial. The Court held that under the 
circumstances the privilege was waived. Id. at 239-40. Justice White, in 
a concurring opinion joined by then-Justice Rehnquist, questioned the Court’s 
reaching the “waiver” issue before determining what protection the report had in 
the first instance. Justice White opined that the work-product doctrine of 
Hickman could not be 
 
extended 
wholesale from its historic role as a limitation on the nonevidentiary material 
which may be the subject of pretrial discovery to an unprecedented role as a 
limitation on the trial judge’s power to compel production of evidentiary matter 
at trial . . . .
[T]he 
work-product doctrine of Hickman v. Taylor, supra, has been viewed 
almost exclusively as a limitation on the ability of a party to obtain pretrial 
discovery. It has not been viewed as a “limitation on the broad discretion as to 
evidentiary questions at trial.”
 
 
Id. at 
242-43 (White, J., concurring). As to the work-product privilege and trial 
evidence Justice White continued:
 
Indeed, even in the pretrial discovery area 
in which the work-product rule does apply, work-product notions have been 
thought insufficient to prevent discovery of evidentiary and impeachment 
material. In Hickman v. Taylor, 329 U.S. at 511, the Court 
stated: “. . . Where relevant and nonprivileged facts remain 
hidden in an attorney’s file and where production of those facts is essential to 
the preparation of one’s case, discovery may properly be 
had. . . .” Pursuant to this language, the lower courts have 
ordered evidence to be turned over pretrial even when it came into being as a 
result of the adversary’s efforts in preparation for trial...
Accordingly, 
it would appear that with one exception to be discussed below, the work-product 
notions of Hickman v. Taylor, supra, impose no restrictions on the trial 
judge’s ordering production of evidentiary matter at trial; that these notions 
apply in only a very limited way, if at all, to a party’s efforts to obtain 
evidence pretrial pursuant to discovery devices . . . .
 
Id. 
at 249-51 (emphasis in original). Justice White then referenced an example 
of such a disclosable fact: “A member of a defense team [who] witnesses an 
out-of-court statement of someone who later testifies at trial in a 
contradictory fashion becomes at that moment a witness to a relevant and 
admissible event . . . .” Id. at 250. Although Justice White was 
addressing whether notes of the defense team member concerning the witness’s 
statement should be disclosed in the trial for which the notes were prepared, a 
matter on which Texas and federal procedure might differ, the substance of his 
example applies to the situation before us. Attorneys and members of an 
attorney’s trial-preparation team may in some circumstances be fact witnesses to 
matters and events.
Furthermore, 
to the extent a work product privilege exists, it can be waived. Nobles, 
422 U.S. at 239. Texas rules and practice are in accord. If a privilege applies, 
it is waived if the “person or a predecessor of the person while holder of the 
privilege voluntarily discloses or consents to disclosure of any significant 
part of the privileged matter unless such disclosure is itself privileged.” 
Tex. R. Evid. 511(1); see 
Axelson, 798 S.W.2d at 554.
In disputes 
such as this, the burden of proceeding and producing evidence must be on one of 
the parties. The trial court effectively placed the burden on the Crudups to 
show why the DA’s attorneys and employees should be required to testify and what 
information or facts would be elicited from them. That is different from the 
placement of the burden by Texas 
Rule of Evidence 501 and our prior cases. We have previously required the party 
resisting testifying or having its employees testify to shoulder the burden of 
properly asserting a privilege and showing that it applied to the testimony in 
question. See Huie v. DeShazo, 922 S.W.2d 920, 926 (Tex. 1996) (orig. 
proceeding); Peeples v. Honorable Fourth Supreme Judicial Dist., 701 
S.W.2d 635, 637 (Tex. 1985) (orig. proceeding); Giffin v. Smith, 688 
S.W.2d 112, 114 (Tex. 1985) (orig. proceeding). See also Tex. R. Civ. P. 199.6 (providing that a 
party seeking to avoid having a witness give deposition testimony on the basis 
of privilege is required to provide evidence to support the claim of privilege 
in the form of testimony or affidavits served before hearing on the privilege 
claim). The quashed subpoenas in this case were not discovery inquiries 
requesting the DA’s office to disclose specific information to which the motion 
for protective order was directed. They were trial subpoenas which would require 
the witnesses to testify generally. At a minimum the trial court should have 
required the DA’s office to show what particular knowledge and information 
possessed by its employees was work product for which the privilege had not been 
waived. It then could have limited the Crudups’ inquiries pending further 
development of a record. Because this record is clear that the DA did not make 
any such showing, the DA’s employees were not entitled by law or rule to refuse 
to be witnesses and testify, even if some testimony as to their knowledge, 
information, and mental processes was later properly excluded upon objection. 
Tex. R. Evid. 501(1), (2); 
511(1). Nor was the DA’s office entitled to prevent its employees from being 
witnesses and testifying absent such showing. Tex. R. Evid. 501(4).
The Court 
concludes that conversations between the DA’s office and Blank during the course 
of the criminal charge investigation were work product. But Blank was a 
non-party to the criminal proceeding and was not an employee of the state. The 
DA’s office did not offer any proof that more conversations between Blank and DA 
employees took place than were memorialized by the DA’s file. Apart from 
information disclosed by notes in the DA’s file, for which the privilege had 
been waived by disclosure, the content of statements made by Blank to the DA’s 
employees, if any, might be work product. See Tex. R. Civ. P. 192.3(h). But even in 
the absence of a record showing there were more conversations between Blank and 
the employees than are disclosed in the DA’s file and assuming there were, 
statements made by the DA’s employees to Blank arguably, if not conclusively, 
were not privileged. The DA’s office did not show that any conversations between 
its employees and Blank not memorialized in its litigation file included work 
product, that is, either (1) material prepared by the DA’s office or its 
employees for, or mental impressions of its employees developed in anticipation 
of, the criminal trial; or (2) communications made in preparation for the 
criminal trial between a party and the party’s representatives. See Tex. R. Civ. P. 192.5(a). If the DA’s 
employee’s statements to Blank did not include work product, the statements were 
not privileged to start with. If the statements to Blank disclosed work product, 
the privilege as to the material disclosed was presumptively waived and the DA 
would have had the burden to prove or show why the conversations did not effect 
a waiver of privilege as to the disclosed matters. See Tex. R. Evid. 511(1); Jordan v. 
Court of Appeals for Fourth Supreme Judicial Dist., 701 S.W.2d 644, 648-49 
(Tex. 1985) (orig. proceeding); see also Axelson, 798 S.W.2d at 553-54 
(“Since there was evidence that the investigation [which was being claimed as 
privileged work product] was disclosed to the FBI, IRS, and the Wall Street 
Journal, the court of appeals properly held that these privileges had been 
waived.”); Nat’l Union Fire Ins. Co. v. Hoffman, 746 S.W.2d 305, 311 
(Tex. App.CDallas 
1988) (orig. proceeding). And, to the extent that documents memorializing the 
conversations had been produced and the privilege as to their contents thereby 
waived, the DA’s employees had no privilege to refuse to testify about them. 
See Tex. R. Evid. 501; 
Hoffman, 746 S.W.2d at 311 (holding that attorneys who authored letter to 
client which had been disclosed could be examined about the letter despite claim 
of attorney-client privilege).
Because the 
Crudups’ response raised the question of disclosure of the DA’s work product 
both by disclosure of the DA’s litigation file and by its employees’ 
conversations with Blank, the question of waiver of privilege was raised and the 
DA had the burden of proving that no waiver occurred. See Jordan, 701 
S.W.2d at 648-49. Even though the Crudups did not have the burden to proceed, 
given the state of the record, their response to the motion specifically set out 
some reasons the DA’s motion should be denied. As noted above, those reasons 
included assertions that (1) the subpoenaed witnesses were fact witnesses 
because they had conversations with real party in interest Cindy Blank and 
testimony about those conversations was not privileged; and (2) prior production 
of the DA’s file waived any privilege as to contents of the file. The Crudups 
provided support for their response: a copy of the DA’s file. The file contains, 
among other matters, a report from investigator Larry and notes documenting 
progress of the prosecution and conversations between Blank and assistant DAs 
handling the case. At least one of the conversations took place after the 
criminal proceeding was dismissed. As previously noted, the DA was representing 
the State in the criminal proceeding against David Crudup; Blank was neither a 
party to the proceeding nor an employee of the state; and the DA did not prove 
any reason that the content of its employees’ conversations with such a 
non-party witness was privileged work product. If the DA’s employees disclosed 
work product to Blank in the conversations or by disclosure of the file and if 
either disclosure was significant, then waiver may have occurred as to more of 
the DA’s work product than just the amount disclosed. See Tex. R. Evid. 511(1). Intuitively, one 
could speculate that there remained some of the DA’s work product for which the 
privilege had not been waived. But speculation is not sufficient: proof is 
required.
In their 
motion for reconsideration of the trial court’s order, the Crudups attached and 
quoted individual notes from the DA’s file setting out the contents of a 
conversation between Blank and the assistant DA handling the prosecution. They 
again urged that the contents of notes reflecting conversations were a proper 
subject of testimony from the subpoenaed witnesses. The DA’s office still did 
not attempt to show authority for or offer evidence to support its employees 
being exempt from giving testimony as to contents of the notes. The trial court 
denied the Crudups’ motion to reconsider.
The quashing 
of subpoenas by the trial court on this record turned the procedure for 
protecting privileged work product upside down. Instead of the DA having to show 
why its employees who had knowledge of relevant matters should be protected from 
testifying, the Crudups’ attorney had to try to preserve his clients’ right to 
call witnesses by disclosing his work product in pleadings and argument 
in the trial court and setting out testimony he wanted to elicit from the 
subpoenaed employees. He has had to continue that course through two appellate 
court proceedings.
Unlike the 
situation in Walker where the district attorney challenged an overly 
broad subpoena and court order, here it was the DA’s office that made an overly 
broad request seeking an order from the trial court permitting witnesses to 
refuse to give testimony. See Tex. R. Evid. 501; Walker, 873 
S.W.2d at 380. If the DA’s office had sought only to preclude testimony as to 
work product, the privileged nature of the subject matter might not have 
required much, if any, proof. The trial court could have entered a protective 
order precluding the Crudups’ attorney from inquiring into certain matters 
pending further orders of the court. Then as the trial proceeded the court would 
have had the benefit of at least some record on which to base its decision as to 
both the existence of privilege as to the subject matter and whether waiver of 
the privilege as to the specific testimony sought had occurred. When the DA’s 
office ended its pretrial presentation in the trial court without providing 
proof that all of the testimony the subpoenaed witnesses could give would be 
work product for which the privilege had not been waived, however, that should 
have been the end of the matter as to the motion to quash. There was no evidence 
to support the trial court’s order which effectively granted a privilege to the 
DA’s employees and attorneys from testifying at all, and the motion should have 
been denied. See Tex. R. 
Evid. 501. The motion should have been denied also because the question 
of waiver of the privilege by disclosure was raised and there was not evidence 
that waiver had not occurred. See Tex. R. Evid. 511(1).
A quote from 
the United States Supreme Court which we have previously referenced is 
applicable here:
 
“Proper 
presentation of a client’s case demands that (the attorney) assemble 
information, sift what he considers to be the relevant from the irrelevant 
facts, prepare his legal theories and plan his strategy without undue and 
needless interference.”
 
Nat’l Union 
Fire Ins. Co. v. Valdez, 863 S.W.2d 458, 461 (Tex. 1993) (quoting 
Hickman, 329 U.S. at 511). Much evidence can be presented in different 
ways. For example, records of events can be read or witnesses can be called to 
testify as to the matters covered by the records; witnesses can be called live 
or by reading depositions; or several witnesses can be called to present 
evidence (hopefully non-repetitiously) which could be presented by one witness 
when the impact of calling multiple witnesses will be greater in the trial 
lawyer’s judgment than using only one witness to tell the story. Decisions about 
how evidence will be presented at trial so as to maximize the client’s chances 
of prevailing are among the most important a trial lawyer must make. In this 
case the trial court’s order unduly interfered with the Crudups’ attorney’s 
trial preparation and forecloses certain choices as to how his client’s case can 
be presented at trial. Among other problems it creates, the trial court’s order 
(1) impairs the Crudups’ attorney’s ability to determine how best to present the 
Crudups’ case to the jury because he cannot count on having the subpoenaed 
witnesses (or any other witness from the DA’s office) available to testify; (2) 
forecloses the Crudups’ attorney from using live testimony to present and 
explain matters disclosed by the DA’s file such as the dates of contact with 
Blank, the substance of conversations with her and both the existence and 
substance of reports from police officers and investigators; and (3) keeps the 
Crudups’ attorney from asking DA employees to interpret notes they made in the 
case file, or even whether records of all conversations with complaining 
witnesses were made.
The Crudups’ 
counsel has maintained that he planned to prove that the complaint made by the 
Blanks to the DA was false and that the DA would not have filed the criminal 
proceedings absent the false complaint. Maybe he can; maybe he can’t. But 
counsel was entitled to formulate and pursue trial strategy without having it 
limited by a preemptive exclusion of certain witnesses with knowledge of 
relevant matters or having to disclose his strategy and justify it in pretrial 
and appellate proceedings simply because the DA’s office filed a motion such as 
the one it filed.
I would deny 
the relief sought by the DA’s office. See State v. Biggers, 360 
S.W.2d 516, 517 (Tex. 1962).
 
 
_____________________________________
Phil 
Johnson
Justice
 
OPINION DELIVERED: May 4, 
2007







[1] The DA’s motion arguably sought protection for the 
contents of its case file. The trial court’s order granted the motion without 
specifying whether the material in the DA’s case file was going to be excluded 
from evidence as work product or whether the court only quashed the trial 
subpoenas. The DA disclaims any issue as to the documents which were produced 
and asserts that the only issue is whether the subpoenas were properly 
quashed.

[2] The motion was signed by an Assistant Civil Division DA 
whose address was listed as 300 Dolorosa in San Antonio. The record gives the 
address of the Bexar County Courthouse as 100 Dolorosa C apparently a short distance from the DA’s 
office.

[3] Even though Walker dealt with discovery matters 
and the case before us deals with trial testimony, neither party contends that 
the principles to be applied in determining privilege and waiver are different 
in the different settings. Both parties rely on cases involving discovery 
matters.

[4] See Tex. 
R. Civ. P. 199.5(d)-(g) and 199.6 as to conduct of oral depositions and 
assertion of privilege from 
testifying.