IN THE INTEREST OF TU, KU, AND KU



 NO. 07-07-0213-CV


 IN THE COURT OF APPEALS


 FOR THE SEVENTH DISTRICT OF TEXAS


 AT AMARILLO


 PANEL B


 NOVEMBER 8, 2007

 ______________________________


 IN THE INTEREST OF T.U., K.U., and K.U.

 _________________________________


 FROM THE 72nd DISTRICT COURT OF LUBBOCK COUNTY;


 NO. 2005-530,783; HON. KEVIN HART, PRESIDING

 _______________________________


 Memorandum Opinion

 

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 Appellant Jennifer Upton appeals from a final order terminating her parental
rights to her three minor children, T.U., K.U., and K.U. In doing so, she challenges the
legal and factual sufficiency of the evidence supporting the statutory grounds for
termination; she does not contest the decision that termination was in the best interests
of the children, however. We affirm the order of the trial court. 

 Standard of Review

 The applicable standards of review are found in In re J.F.C., 96 S.W.3d 256, 266-67 (Tex. 2002) and In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). We refer the parties to
them.

 


 Application of Standards 

 The court found by clear and convincing evidence that Upton 1) knowingly placed
or knowingly allowed the children to remain in conditions or surroundings which
endangered the physical or emotional well-being of the children, 2) engaged in conduct
or knowingly placed the children with persons who engaged in conduct which
endangered the physical or emotional well-being of the children, and 3) failed to comply
with the provisions of a court order that specifically established the actions necessary
for her to obtain the return of the children. Sufficient evidence supporting the existence
of any one of those three statutory grounds obligates us to affirm the judgment. See In
re A.V., 113 S.W.3d 355, 362 (Tex. 2003) (so recognizing).

 Of record is evidence of Upton's living with physically violent men. One killed a
child of hers. Another physically abused her. Expert testimony revealed that exposure
to such behavior can have "serious" impact upon her children. Other evidence
disclosed 1) that another child was sexually abused by another youth's father while in
Upton's care, 2) that a child had died from medical conditions while in her care, 3) that
two of her children previously had been removed from her care, 4) that Upton had 
habitually ingested controlled substances (as did one or more of the men with whom
she and her children lived), 5) that she drove while intoxicated and succumbed to an
accident with at least one child in the car, 6) that she had been incarcerated over 20
times for such crimes as possession of controlled substances, public intoxication, DWI,
credit card abuse, and theft with a credit card, 7) that repeated criminal conduct can
have an adverse affect upon the well-being of children, 8) that she could not provide a
stable home, 9) that she knew of her deficiencies and could not correct, but only repeat,
them, 10) that she had left her young children alone in a motel room while working
(though she purportedly asked another motel guest to watch them), 11) that she had left
her children unsupervised in a bath tub while knowing that one enjoyed playing with the
faucet, 12) that one of her children was severely burned when left unsupervised in the
bathtub, 13) that she would not have taken her burned child to obtain medical treatment
had she known that the State was to become involved in the incident, 14) that she was
not capable of making decisions necessary to successfully raise children, 15) that she
had already relinquished her rights to three of her children, 16) that she routinely left her
children in the care of her physically violent 17 year old, drug abusing boyfriend (Upton
was over thirty), 17) that Upton and her children were evicted from an apartment after
engaging in a domestic disturbance with her 17 year old boyfriend, 18) that she would
change addresses without notifying CPS, 19) that she failed to complete a drug and
alcohol assessment as required, 20) that she would focus on only one of the children
while leaving the others unsupervised during visitations by CPS workers, 21) that her
children had emotional/behavioral problems, and 22) that she failed to attend the final
hearing to decide termination although she had been notified of its date. Finally, the
evidence indicates that the children in question were four, two, and two years old. 

 As previously mentioned, one of the grounds found to justify termination involved
Upton's engaging in conduct or knowingly placing the children with persons who
engaged in conduct which endangered the physical or emotional well-being of the
children. See Tex. Fam. Code Ann. §161.001(1)(E) (Vernon Supp. 2006). To satisfy it,
the State need not have proved that the children at issue here were the focus of the
conduct or that they were actually harmed by it. In re C.J.F. 134 S.W.3d 343, 351 (Tex.
App.-Amarillo 2003, pet. denied). Rather, proof that Upton pursued a course of
conduct having the effect of endangering her children sufficed. See id. And, the
evidence we itemized above does just that. In other words, it provided the trial court
ample basis upon which to form a firm conviction and belief that Upton engaged in
conduct or knowingly placed the children with persons who engaged in conduct
endangering the physical or emotional well-being of T.U., K.U. and K.U. See In re S.P.,
168 S.W.3d 197, 204-05 (Tex. App.-Dallas 2005, no pet.) (finding the evidence legally
sufficient when there were incidents of domestic violence, the mother lacked parenting
skills and judgment and failed to take her medication, and there was evidence one or
two children not the subject of the termination had been sexually molested by the father
but the mother did not believe the children were endangered). And, while it may be that
other evidence showed that she of late maintained employment, attended visitations
with her children, and actively participated in therapy and counseling when she
attended, that evidence did not require the trial court to ignore the history of
endangerment to which the children had been exposed. 

 In sum, legally and factually sufficient evidence supported at least one statutory
ground upon which termination was based. Accordingly, the order of termination is
affirmed.


 Brian Quinn 

 Chief Justice 

 



he court consider or discuss Martinez. 592 S.W.2d at 400 (holding that a trial
court order requiring a party to furnish authorization for opposing attorneys to view medical
records did not involve the making of a non-existent record). Moreover, Colonial Pipeline,
968 S.W.2d at 938, is not controlling as to medical records because it did not involve an
authorization for medical records, which at the time of the opinion, was authorized by former
Rule 166b(2)(h). 

Employment Records


 Relator did not object to production of employment records on the ground of
relevance. Instead, relator contended that the requested authorization was overbroad. In
the absence of an objection on the ground of privilege or relevance, employment records
are subject to discovery under Rule 192.3(a), which provides that a party may obtain
discovery of any matter that is not privileged and is relevant. Further, under Rule 192.3(b),
records or tangible things in the custody or control of a party are subject to production. 
(Emphasis added). Additionally, the right to possession of a record that is equal or superior
to the party who has physical possession of the record constitutes possession for purposes
of this rule. Rule 192.7(b). 

 Moreover, relator objected to the requests for medical and employment records on
the ground that the requests were overbroad. She did object to signing authorizations for
medical or employment records on the ground that it would require her to prepare a non-existent record. According to the record, it appears that relator signed and provided a
limited medical authorization, but the trial court expanded the time and scope of the
authorization by paragraph one of the order. Mandamus will not issue to compel a trial
judge to do what he or she has not been requested to do. Owens-Corning Fiberglas v.
Caldwell, 830 S.W.2d 622, 624 (Tex.App.-Houston [1st Dist.] 1991, no writ). This record
fails to demonstrate that relator presented these contentions to the trial court. For all of the
above reasons, relator's first issue is overruled.

 By her second issue, relator contends the trial court abused its discretion in
overruling her objections to requests for production that (b), (g), (j), (l), (m), (o), (u), (v), (w),
and (x) were overbroad and lacked specificity. Before we consider the ten requests, we first
review some of the relevant rules and authorities.

 The Texas Rules of Civil Procedure authorize discovery into any relevant matter that
is not privileged and is reasonably calculated to lead to the discovery of admissible
evidence. Rule 192.3. However, in Axelson, Inc. v. McIlhany, 798 S.W.2d 550, 553 (Tex.
1990), the Court stated that:

 this broad grant, however, is limited by the legitimate interests of the
opposing party to avoid overly broad requests, harassment, or disclosure of
privileged information.


(Emphasis added). Additionally, in American Optical, 988 S.W.2d at 713, in discouraging
"fishing expeditions," the court held "requests must be reasonably tailored to include only
matters relevant to the case." (Emphasis added). Similarly, parties responding to
discovery are also encouraged to utilize reasonably tailored responses to discovery
requests. See Id. Accordingly, a party responding to discovery:

 cannot simply make conclusory allegations that the requested discovery is
unduly burdensome or unnecessarily harassing. The party must produce
some evidence supporting its request for protective order.


In re Alford Chevrolet-Geo, 997 S.W.2d 173, 181 (Tex. 1999). In its review of the discovery
process in American Optical, 988 S.W.2d at 713, the Court concluded that the latitude
afforded the parties in the discovery process is not unlimited, and "the trial court must make
an effort to impose reasonable discovery limits." Alford Chevrolet-Geo, 997 S.W.2d at 181. 
Parties seeking or objecting to discovery are expected to cooperate and make any
agreements "reasonably necessary for the efficient disposition of the case." (Emphasis
added). Rule 191.2. Although the use of so called "stock" or "boiler plate" discovery
initiatives or responses is common practice, these authorities suggest that requests or
responses should be custom tailored to the specific case, otherwise the interest of judicial
economy will not be served and the objective that discovery be conducted on a case by
case basis will be thwarted.

Overbroad Requests

 Real party's requests (b), (g), (l), (m), (o), and (u) sought production of various
documents or records without any limitation as to time. Relator objected to these requests
with conclusions that they were overbroad and lacked specificity without any explanation
of the reasons or argument. In Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 815 (Tex.
1995), the Court held that a request for records "without limitation as to time, place or
subject matter, is overbroad." (4) Here, these requests for production (b), (g), (l), (m), (o), and
(u) are overbroad "on their face" according to the Court in Texaco. (5)

Work Product 

 In addition to the objection that the requests are overbroad, relator objected to
requests (j), (v), and (w) on the grounds of work product privilege, but respondent overruled
the objections. Assertion of a privilege is not a ground for a motion for protective order or
an objection. See Rule 192.6(a). Instead a party desiring to assert a privilege must
proceed as set out in Rules 193.3 and 193.4. Because the question of work product
privilege was not before the respondent, those objections remain subject to presentation
if relator elects to proceed according to Rules 193.3 and 193.4. Relator's second issue is
sustained, except as to request (x), which was limited as to time. 

 Accordingly, the writ of mandamus is conditionally granted in part and denied in part.
Although we have jurisdiction to direct the trial court to proceed to make an effort to impose
reasonable discovery limits, we may not tell the court what limits it should enter. In re
Martinez Ramirez, 994 S.W.2d 682, 684 (Tex.App.-San Antonio 1998, no pet.). The trial
court is directed to consider and determine, in the exercise of its discretion, the need for
reasonable discovery limits as to requests (b), (g), (l), (m), (o), and (u); otherwise the writ
is denied. The writ will issue only if the trial court fails to comply with these instructions.

 

 Don H. Reavis

 Justice



Publish.




1. All references to rules herein are to Texas Rules of Civil Procedure.
2. Production of medical records of non-parties is now covered by Rule 196.1(c).
3. See 6 William Dorsaneo III, Texas Litigation Guide § 90.02[5][k] (2001); See also
3 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil Practice §12.19 (2d ed.
2000).
4. The term overly broad as used in Axelson, Inc. v. McIlhany, 798 S.W.2d 550, 553
(Tex. 1990), and the term over broad as used in Texaco is not defined in the opinions or
the discovery rules, however it appears that it would be good practice to state the reasons 
supporting an objection that the request is overbroad as to (1) time, (2) place, or (3)
subject matter. 
5. Because the objections that the requests were overbroad should have been
sustained, we need not address the objection as to specificity.