# IN THE SUPREME COURT OF TEXAS

════════════

No. 19-1022

════════════

IN RE K & L AUTO CRUSHERS, LLC AND THOMAS GOTHARD, JR., RELATORS

════════════════════════════

ON PETITION FOR WRIT OF MANDAMUS

════════════════════════════

**Argued January 5, 2021**

JUSTICE BOYD delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE DEVINE, JUSTICE BLACKLOCK, and JUSTICE BUSBY joined.

JUSTICE HUDDLE filed a concurring opinion, in which JUSTICE BLAND joined, and in which JUSTICE GUZMAN joined as to Parts II(A) and III.

We held three terms ago that the negotiated rates a medical provider charged to patients' private insurers and public-entity payors were relevant and discoverable on the issue of the reasonableness of the "full" rates the provider charged to an uninsured patient for the same services. *In re N. Cypress Med. Ctr. Operating Co.*, 559 S.W.3d 128, 129 (Tex. 2018) (orig. proceeding). Based on that holding, we concluded that the trial court did not abuse its discretion by allowing discovery of the provider's negotiated rates in the uninsured patient's suit challenging the reasonableness of the full rates the provider charged and secured with a medical lien. *Id.*

This case presents the same issue, but in a different context. Here, the defendants in a personal-injury suit argue that the trial court abused its discretion by quashing their discovery requests, including those for information regarding the plaintiff's medical providers' negotiated rates and costs. We hold that the information we found relevant to the reasonableness of the provider's rates in *North Cypress* is equally relevant here. For the reasons explained below, we

conclude that the trial court abused its discretion by denying outright the defendants' narrowed requests—which they expressly limited to the discovery we approved in *North Cypress*—because at least some of the discovery requested is relevant, the narrowed requests were sufficiently tailored, the providers and the plaintiff failed to submit evidence establishing that the narrowed requests were unduly burdensome, and the trial court failed to consider whether a protective order would reasonably protect against the disclosure of any confidential information or trade secrets. Because we also conclude that the defendant has no adequate appellate remedy, we conditionally grant mandamus relief, without prejudice to the providers' and plaintiff's right to adequately support their objections on rehearing in the trial court.

## I.
## Background

Kevin Walker alleges he was injured in a motor-vehicle collision with a tractor-trailer rig driven by Thomas Gothard, Jr. According to Walker, the accident occurred at an intersection where both vehicles had stopped side-by-side in adjacent lanes that both permitted right turns. As Gothard made the turn from the left lane, his trailer's passenger-side wheels caught the rear driver-side door of Walker's car, which was still stopped in the right lane. The trailer dragged the car a short distance before Gothard stopped, scraping and tearing the sheet metal along the driver's side of Walker's car. After the accident, the parties took photos, exchanged information, and drove away without reporting any injuries.

Walker first sought medical treatment four days after the collision. Five months later, Walker underwent surgeries on his cervical spine and shoulder to repair injuries he claims he sustained in the accident. Walker's medical providers charged him a total of about $1.2 million for the surgeries and related treatment. Walker did not pay for the medical care or provide information

2

on private insurance or public benefits. Instead, his attorneys sent the medical providers "letters of protection,"[1] promising they would "attempt to protect [the providers'] interest in [Walker's] account" when they settled Walker's claims, but "only for any reasonable and necessary medical charges."

Walker sued Gothard and his employer, K & L Auto Crushers (collectively, K & L Auto).[2] After Walker served medical-expense affidavits under section 18.001 of the Civil Practice and Remedies Code, K & L Auto served counter-affidavits challenging the amounts billed as unreasonable. *See* TEX. CIV. PRAC. & REM. CODE § 18.001. K & L Auto then served subpoenas on Walker's healthcare providers, requesting production of information related to their billing practices and rates over a period of several years. The subpoenas included multiple requests, some with multiple sub-requests, and sought a wide array of information. Three of the providers—Saint Camillus Medical Center, Pine Creek Medical Center, and Dr. Andrew Indresano—filed motions to quash the subpoenas, asserting they were overbroad, unduly burdensome and harassing, and not reasonably calculated to lead to the discovery of admissible evidence, and that they sought information that was irrelevant, inadmissible, confidential, proprietary, and protected as trade secrets. Walker also moved for a protective order and to quash the subpoenas, essentially on the same grounds.[3] K & L Auto then moved to compel the discovery. After a hearing, the trial court

---

[1] Plaintiffs' personal-injury attorneys sometimes provide "letters of protection" to their clients' healthcare providers, in lieu of any immediate payment, to assure future payment from the proceeds of any recovery from the third party who allegedly caused the injuries. *See, e.g.*, *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24–25 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

[2] Walker's passenger is also a plaintiff in the suit, but discovery regarding her medical expenses is not at issue here.

[3] Walker's motion also sought to quash a subpoena served on another provider, NPPS Services. NPPS Services did not file its own motion or objections to the subpoena. The trial court's order granting the motions did not mention NPPS Services, and NPPS Services has not filed any briefing in this Court.

sustained the providers' objections and quashed the subpoenas without explaining the basis for its ruling.

A few weeks later, Walker moved to strike some of K & L Auto's experts' counter-affidavits, arguing that the experts' assertions that Walker's medical expenses were unreasonably high were conclusory, unreliable, and unsupported by facts and data. K & L Auto then moved for partial reconsideration of the order quashing the subpoenas, arguing its experts needed information about the medical providers' negotiated rates and costs to adequately contest the reasonableness of the full rates the providers charged to Walker. K & L Auto's motion abandoned many of the requests and sub-requests the initial subpoenas contained and narrowed its requests to seek production only of documents related to (1) the amounts the providers charged insurance companies, federal insurance programs, and in-network healthcare providers for the services, materials, devices, and equipment billed to Walker as of the date of Walker's treatment, (2) the amounts the providers paid for the devices and equipment billed to Walker, and (3) the providers' chargemaster (full) rates for the devices and equipment billed to Walker and how the providers determined those rates.[4] But K & L Auto still broadly sought, among other things, *all*

---

[4] Specifically, K & L Auto requested the following information:

> Documents reflecting agreements between [the providers] and insurance companies governing the amounts charged as of [the date of Walker's treatment] for the medical [services, materials, devices, and equipment] listed on the billing detail [for Walker's treatment];
> Documents reflecting amounts charged federal insurance programs and in network healthcare providers as of [the date of Walker's treatment] for the medical [services, materials, devices, and equipment] listed on the billing detail [for Walker's treatment];
> Documents reflecting agreements, communications, billings, and payments between [the provider] and the manufacturer, seller, or distributor of the various devices/equipment listed on the billing detail for the charges for Plaintiff Walker; and
> Documents reflecting the Charge Description Master and how the Charge Description Master was determined as of [the date of Walker's treatment] for the medical devices/equipment listed on the billing detail [for Walker's treatment].

*communications* between the providers and any manufacturer, seller, and distributor of any device used by the providers to treat Walker, and in many cases, *all documents* related to the services and devices provided.

K & L Auto reiterated in its motion for reconsideration that it was "willing to enter into any reasonable and necessary protective orders with the medical providers to address concerns about confidentiality of their contractual agreements with third-party payers and insurers." Based on its willingness to enter into a protective order and the narrowing of its requests, K & L Auto asserted that its requests were now "targeted to the specific medical devices/services at issue, d[id] not implicate any concerns about confidentiality of other patient records, and f[ell] squarely within the discovery authorized by" our decision in *North Cypress*.

The providers responded by arguing the narrowed requests suffered the same problems as the original requests contained in the subpoenas. Relying on the affidavits they had submitted in support of their objections to the initial requests, they continued to complain of the general volume, breadth, and burden of the narrowed requests. They did not provide any additional evidence, however, to support their objections that the narrowed requests imposed an undue burden or implicated confidential information.

At a hearing on the reconsideration motion, K & L Auto explained, "What we are trying to do is come in with a targeted motion for partial reconsideration" and "focus the Court on the specific discovery requests [it] made that [it thought were] expressly authorized" by *North Cypress*. It then noted that *North Cypress* permitted discovery of medical providers' reimbursement rates with private insurers, Medicare, and Medicaid, and discovery of the costs to medical providers for the equipment and devices reflected in the patient's bills. K & L Auto

5

specifically pointed the trial court to the fact that it had made requests "in [its] subpoena that are along those lines and are targeted to the specific medical services and devices at issue in the time frame at issue," and requests "seeking discovery about the cost to the medical providers of the equipment and devices that were included in their bills in the time frame at issue."

The trial court denied the motion for reconsideration without explanation. The court of appeals denied K & L Auto's petition for writ of mandamus, stating only that K & L Auto failed to show it was entitled to relief. No. 05-19-01061-CV, 2019 WL 5558597 (Tex. App.—Dallas Oct. 29, 2019, orig. proceeding). K & L Auto now seeks mandamus relief in this Court.

## II.
## Mandamus Relief

Mandamus is an extraordinary, discretionary remedy available only when a trial court clearly abuses its discretion and a relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36, 138 (Tex. 2004) (orig. proceeding). We conclude that K & L Auto has demonstrated that mandamus relief is appropriate here.

### A.     Abuse of Discretion

Trial courts have broad discretion to decide whether to permit or deny discovery. *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 802 (Tex. 2017) (orig. proceeding). Generally, they abuse that discretion only if their decision is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding) (quoting *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding)). To demonstrate an abuse of discretion, a party seeking mandamus relief must show that the trial court "could have reached only one conclusion and that a contrary finding is thus arbitrary and unreasonable." *Id.* Alternatively, the party may demonstrate that the court erred in "'determining

6

what the law is or applying the law to the facts,' even when the law is unsettled." *Id.* (quoting *Prudential*, 148 S.W.3d at 135).

Our procedural rules govern the scope of permissible discovery. Generally, the rules broadly permit discovery of "any matter that is not privileged and is relevant to the subject matter of the pending action." TEX. R. CIV. P. 192.3(a). This includes information that "will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Because the purpose of discovery is to enable courts to decide disputes based on "what the facts reveal, not by what facts are concealed," *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 394 (Tex. 2014), the rules must be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial," *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990) (orig. proceeding).

But discovery is also subject to a "proportionality overlay." *State Farm Lloyds*, 520 S.W.3d at 599. Even when a party seeks information that is relevant and not privileged, courts should "make an effort to impose reasonable discovery limits," *id.* at 604 (quoting *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam)), particularly when "the burden or expense of the proposed discovery outweighs its likely benefit," TEX. R. CIV. P. 192.4(b).

K & L Auto contends that the trial court abused its discretion by completely denying discovery of any information regarding the medical providers' negotiated rates and costs because that information is not privileged and is relevant and necessary to determine whether the rates the providers charged to Walker were reasonable. Walker and the providers argue that the trial court did not abuse its discretion because the information is not relevant and, even if it were, the requests are overbroad, unduly burdensome and harassing, and seek information that is confidential and

7

protected as trade secrets. We address each objection in turn, focusing on the discovery requested in K & L Auto's motion for partial reconsideration and as narrowed by its requests at the hearing before the trial court. We conclude that the information sought through K & L Auto's narrowed requests is relevant and the trial court abused its discretion by completely denying discovery of that information.

## 1. Relevance

Evidence is relevant if it has "any tendency" to make "more or less probable" a fact that is "of consequence in determining the action." TEX. R. EVID. 401. Relevant evidence is generally admissible at trial, while irrelevant evidence is not. TEX. R. EVID. 402. But for purposes of pre-trial discovery, evidence is relevant even if it's not admissible at trial, so long as it's "reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a).

We held in *North Cypress* that information regarding the negotiated rates a hospital charged to private insurers and public payors, "[w]hile not dispositive," was "at least relevant" to whether the higher chargemaster rates the hospital charged to a self-paying patient for the same services were reasonable. 559 S.W.3d at 129. We also held that the costs the hospital incurred to provide the services had "some bearing on the reasonableness of its patient charges." *Id.* at 136. We explained the healthcare industry's modern "two-tiered" billing structure—consisting of higher "chargemaster" (or "full" or "list") rates for uninsured patients and lower rates charged to private and public insurers—particularly noting that chargemaster rates are both "increasingly arbitrary" and "frequently uncollected." *Id.* at 132.[5] We held that chargemaster rates "are not dispositive of

---

[5] *See also Gunn v. McCoy*, 554 S.W.3d 645, 673 (Tex. 2018) (discussing modern two-tiered healthcare-billing structure); *Haygood v. De Escabedo*, 356 S.W.3d 390, 393 (Tex. 2011) (same).

what is reasonable." *Id.* at 133. And we also acknowledged that providers set their negotiated rates based on numerous considerations and confirmed that negotiated rates are similarly not dispositive of reasonableness. *Id.* at 135. But it "defies logic," we explained, "to conclude that those [negotiated rates] have nothing to do with the reasonableness of charges to the small number of patients who pay directly." *Id.*

Walker and the providers (and several supporting amici[6]) argue that our holding in *North Cypress* should not apply here because that case involved a patient's challenge to a hospital's ability to enforce a lien securing medical charges, while this case involves an injured party's ability to recover such charges from a tortfeasor. Because a medical lien is invalid to the extent it seeks to secure charges that exceed a "reasonable and regular rate," *see* TEX. PROP. CODE § 55.004(d)(1), the reasonableness of the hospital's chargemaster rates was "the central issue" in *North Cypress*, 559 S.W.3d at 133. Here, the providers argue, Walker's ability to recover his medical expenses from K & L Auto does not depend on whether those expenses were reasonable. Instead, they contend, Walker can recover whatever amount was "actually paid or incurred" by him or on his behalf. TEX. CIV. PRAC. & REM. CODE § 41.0105.

We disagree. Section 41.0105 limits a claimant's recovery from a tortfeasor to the amount of medical expenses the claimant "actually paid or incurred," meaning the amount the claimant's provider "has a legal right to be paid." *Haygood*, 356 S.W.3d at 391. So if a provider bills an

---

[6] We received amicus briefs generally supporting Walker and the providers from Tri-City Pain Associates, P.A., the Texas Orthopaedic Association, the Texas Medical Association and the Texas Hospital Association, Advanced Diagnostics Health System, LLC, and the Texas Trial Lawyers Association. We received amicus briefs generally supporting K & L Auto from the Texas Association of Defense Counsel, the Texas Civil Justice League, the American Property Casualty Insurance Association and State Farm Mutual Automobile Insurance Company, and Research and Planning Consultants, L.P., Texans for Lawsuit Reform, the American Tort Reform Association, and the Chamber of Commerce of the United States of America.

9

insured patient at chargemaster rates but, pursuant to its contract with the patient's insurer, is only entitled to receive payment at a reduced, negotiated rate, then the insured can only recover the reduced amount from the tortfeasor because that's the amount "actually paid or incurred." *Id.* at 396–97. But section 41.0105 is not the only limit on a claimant's recovery of medical expenses. In fact, it expressly imposes the "paid or incurred" limitation "[i]n addition to any other limitation under law." TEX. CIV. PRAC. & REM. CODE § 41.0105.

One such "other limitation" is the common-law requirement that the amount of recoverable expenses be reasonable. It has long been well-settled that "recovery of [medical] expenses will be denied in the absence of evidence showing that the charges are reasonable," and proof of the amount charged does not itself constitute evidence of reasonableness. *Dall. Ry. & Terminal Co. v. Gossett*, 294 S.W.2d 377, 380, 383 (Tex. 1956).[7] The enactment of section 41.0105 did not eliminate this common-law limitation; instead, it expressly imposed the "paid or incurred" limitation "[i]n addition to" the reasonableness limitation. TEX. CIV. PRAC. & REM. CODE § 41.0105. In fact, section 18.001, which provides a "purely procedural" process for using affidavits to establish and challenge the reasonableness and necessity of medical expenses, *Haygood*, 356 S.W.3d at 397, recognizes and confirms that claimants can recover medical expenses from a tortfeasor only if the amount charged "was reasonable at the time and place that the service was provided," TEX. CIV. PRAC. & REM. CODE § 18.001.

---

[7] *See also Haygood*, 356 S.W.3d at 391 ("Damages for wrongful personal injury include the *reasonable* expenses for necessary medical care." (emphasis added)); *McGinty v. Hennen*, 372 S.W.3d 625, 627 (Tex. 2012) (per curiam) ("A party seeking to recover remedial damages must prove that the damages sought are *reasonable* and necessary." (emphasis added)); *Mo., K. & T. Ry. Co. of Tex. v. Warren*, 40 S.W. 6, 7 (Tex. 1897) (holding proof of amount of medical expenses charged would not support recovery; instead, "the *reasonable* value of such services should have been proved" (emphasis added)); *Gulf, Colo. & Santa Fe Ry. Co. v. Campbell*, 13 S.W. 19, 20 (Tex. 1890) (holding claimant may only "recover the *reasonable* value of medical services rendered him in effecting a cure" (emphasis added)).

10

Walker and the providers (and their supporting amici) urge us to abolish the common-law reasonableness limitation because it can leave claimants undercompensated and give tortfeasors a windfall when claimants are obligated to pay the amount a medical provider charges regardless of whether that amount is reasonable. But that reasoning fails here because Walker's providers treated him pursuant to letters of protection in which Walker's attorney promised to "attempt" to pay the providers "only for any reasonable and necessary medical charges." We find nothing in the record that legally obligates Walker to pay the full amount the providers charged if the amount is unreasonable.

And even if Walker were legally bound to pay the providers an unreasonable amount for their services, K & L Auto's liability to Walker would still be limited to a reasonable amount. To be sure, the purpose of requiring tortfeasors to compensate claimants for their damages is to make the claimant whole by placing the claimant "in the position in which he would have been absent the defendant's tortious act." *J & D Towing, LLC v. Am. Alt. Ins. Corp.*, 478 S.W.3d 649, 655 (Tex. 2016). But inherent in this purpose is the recognition that tortfeasors are responsible only for losses *caused by* their tortious conduct—that is, losses that are "the necessary and usual result of the tortious act." *Id.*[8] Although the reasonableness limitation may in some cases leave a claimant

---

[8] *See also Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 873 (Tex. 2017) ("[C]ompensatory damages redress concrete losses caused by the defendant's wrongful conduct."); *Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 839–40 (Tex. 1997) ("[A] plaintiff may recover only for those injuries caused by the event made the basis of suit."); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 16 (Tex. 1994) ("Compensatory damages are intended to make the plaintiff 'whole' for any losses resulting from the defendant's interference with the plaintiff's rights."); *Pasadena State Bank v. Isaac*, 228 S.W.2d 127, 128 (Tex. 1950) ("The basic reason underlying rules for the ascertainment of damages for any tortious act is a fair, reasonable, and proper compensation for the injury inflicted as a proximate result of the wrongful act complained of."); *Massachusetts v. Davis*, 168 S.W.2d 216, 222 (Tex. 1942) ("[O]ne who is complaining of a wrongful injury can recover only for such damages as are proximately caused by the injury complained of."); *Seale v. Gulf, Colo. & Santa Fe Ry. Co.*, 65 Tex. 274, 278 (1886) (explaining that defendant's liability extends only to "such injuries as might reasonably have been anticipated, under ordinary circumstances, as the natural and probable result of the wrongful act").

"undercompensated," it ensures that the tortfeasor is held responsible only for losses naturally resulting from its wrongful act. *See id.* If a claimant agrees or is required to pay a medical provider more than a reasonable amount, the difference between the amount paid and a reasonable amount is not a "necessary and usual result of the tortious act," but of the claimant's or provider's conduct. *See id.*

The reasonableness of the claimant's medical expenses is as germane in a personal-injury case as it is in a suit to challenge the validity of a medical lien. Our relevance holdings in *North Cypress* thus apply equally here: while certainly "not dispositive," the negotiated rates the providers charged to private insurers and public payors for the medical services and devices provided to Walker, and the costs the providers incurred to provide those services and devices, are "at least relevant" to whether the chargemaster rates the providers billed to Walker for the same services and devices are reasonable. 559 S.W.3d at 129.

Although we conclude these types of information are relevant under *North Cypress*, we did not hold then, and we do not hold now, that *all communications* or *all documents* regarding those topics are automatically discoverable. Nor does our holding entitle a party to discover all evidence tangentially related to these types of information. Proportionality must control the extent to which a trial court orders such relevant information discoverable.[9] But in light of K & L Auto's motion for reconsideration and its concessions at the hearing on that motion, we conclude the requests were sufficiently narrowed and targeted to what we permitted in *North Cypress* so as to make a

---

[9] *See In re Mem'l Hermann Health Sys.*, 607 S.W.3d 913, 920–21 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding) (concluding order granting discovery requests was an abuse of discretion because it compelled production of documents evidencing reimbursement rates for services different than those received by plaintiff and it sought discovery of reimbursement rates for *all* insurers rather than limiting the requests to insurers who had negotiated rates for the relevant services and time period).

complete denial of the requested discovery arbitrary.[10] *See State Farm Lloyds*, 520 S.W.3d at 604. Even if the law was unsettled, *see id.*, to the extent the trial court denied K & L Auto's narrowed discovery requests based on a lack of relevance, the court abused its discretion.

### 2. Overbreadth

In addition to their relevance objection, Walker and the providers argued that the original and narrowed requests were overbroad. Although our rules must be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial," *Axelson*, 798 S.W.2d at 553, "even these liberal bounds have limits, and discovery requests must not be overbroad." *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding) (per curiam). In essence, an overbroad discovery request is one that seeks irrelevant information. *In re Allstate Cnty. Mut. Ins. Co.*, 227 S.W.3d 667, 670 (Tex. 2007) (orig. proceeding) (per curiam). But a request is not overbroad simply because it "may call for some information of doubtful relevance," *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding) (per curiam), and "the sheer volume of a discovery request does not in itself render the request irrelevant or overbroad as a matter of law," *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180 n.1 (Tex. 1999) (orig. proceeding). Instead, discovery requests and orders are overbroad if they are not properly "tailored with regard to time, place, or subject matter," *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d

---

[10] Through its rehearing motion, K & L Auto expressly narrowed and limited its requests and argued that it was only seeking information regarding the providers' negotiated rates and costs, which we addressed in *North Cypress*. The record does not reflect that the trial court acknowledged or considered these limitations when it denied the rehearing motion. The trial court retains discretion to determine the relevance of the specific information K & L Auto seeks through its narrowed requests, but to the extent its denial of K & L Auto's narrowed requests was based on a lack of relevance, its outright denial of those requests constitutes an abuse of discretion.

13

219, 226 (Tex. 2016) (per curiam),[11] or otherwise require production of information that is not reasonably calculated to lead to the discovery of admissible evidence, *Nat'l Lloyds*, 449 S.W.3d at 490.[12]

Here, K & L Auto's subpoenas initially required the providers to produce a wide array of information regarding their billing practices and rates, covering procedures the providers performed from 2009 to 2018. After the trial court quashed the subpoenas, however, K & L Auto moved for reconsideration and expressly focused its requests on information regarding the negotiated rates and costs for the "same or similar services" and devices Walker was billed for, as of the dates Walker was billed for them.

Although sheer volume does not make discovery overbroad as a matter of law, *Alford*, 997 S.W.2d at 180 n.1, proportionality requires a fact-intensive, complex balancing of many relevant factors, particularly where discovery is sought from non-parties whom trial courts "must" protect from undue burden or expense in answering subpoenas, TEX. R. CIV. P. 176.7. While the original requests implicated *all communications* and *all documents* related to certain topics and the motion

---

[11] *See also Allstate*, 227 S.W.3d at 669 (concluding requests were "overbroad as to time, location, and scope, and could easily have been more narrowly tailored to the dispute at hand"); *Texaco*, 898 S.W.2d at 815 (holding "a request for all documents authored by Sexton on the subject of safety, without limitation as to time, place or subject matter, is overbroad"); *CSX*, 124 S.W.3d at 152 ("Discovery orders requiring document production from an unreasonably long time period or from distant and unrelated locales are impermissibly overbroad."); *Alford*, 997 S.W.2d at 180 n.1 ("[O]verbroad requests [are those that] encompass[] time periods, products, or activities beyond those at issue in the case.").

[12] *See, e.g.*, *In re Shipman*, 540 S.W.3d 562, 569–70 (Tex. 2018) (orig. proceeding) (per curiam) (holding discovery of "not just the computer at issue, but also all electronic 'media,' whether business or personal, and regardless of whether they are related to the issues in the lawsuit, for the past seventeen years," was overbroad); *In re Ford Motor Co.*, 427 S.W.3d 396, 397 (Tex. 2014) (orig. proceeding) (per curiam) (holding request for "detailed financial and business information for all cases the companies have handled for Ford or any other automobile manufacturer from 2000 to 2011" was overbroad); *In re Dana Corp.*, 138 S.W.3d 298, 302 (Tex. 2004) (orig. proceeding) (per curiam) (holding request for inapplicable insurance policies covering fifteen years of exposure was overbroad); *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding) (per curiam) (holding request requiring "a twenty-state search for documents over a five-year period is overly broad as a matter of law").

for partial consideration involved those same requests, K & L Auto made clear at the hearing before the trial court that it sought only the same discovery permitted in *North Cypress*. Thus, despite the broadly written subpoenas originally sent to the providers, K & L Auto's motion and the hearing transcript reflect that K & L Auto agreed to narrow its requests to the information *North Cypress* permitted.[13]

We conclude K & L Auto's narrowed requests are nearly identical to those we approved of in *North Cypress*. Because we held the requests in *North Cypress* were sufficiently tailored and K & L Auto expressly sought to narrow the requested discovery to the time period, devices, and services at issue in this case and approved by *North Cypress*, we conclude its requests here are not overbroad as a matter of law. To the extent the trial court denied K & L Auto's motion for reconsideration on that ground, the court abused its discretion.

### 3. Undue Burden & Harassment

Walker and the providers also argue that the requests were unduly burdensome and harassing. The question of "whether a request for discovery is overbroad is distinct from whether it is burdensome or harassing." *Nat'l Lloyds*, 449 S.W.3d at 488. Under rule 192.4, courts should limit discovery that is "unreasonably cumulative or duplicative" or "obtainable from some other source that is more convenient, less burdensome, or less expensive," or when "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

---

[13] As noted, K & L Auto explained at the hearing that it was seeking reconsideration of its requests that were permitted by *North Cypress*, and it pointed the court to its requests that were "along those lines and [were] targeted to the specific medical services and devices at issue in the time frame at issue," and those that were "about the cost to the medical providers of the equipment and devices that were included in their bills in the time frame at issue." *See N. Cypress*, 559 S.W.3d at 129–30 (approving discovery of (1) all contracts regarding the rates private insurers pay for the hospital services provided to the plaintiff, (2) the Medicare and Medicaid reimbursement rates for the services provided to plaintiff, and (3) North Cypress's annual cost report it provided to Medicare for 2011–2015).

the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." TEX. R. CIV. P. 192.4. This rule imposes a proportionality standard that requires "a case-by-case balancing of jurisprudential considerations." *State Farm Lloyds*, 520 S.W.3d at 599–600.

But a party resisting discovery must do more than "make conclusory allegations that the requested discovery is unduly burdensome." *Alford*, 997 S.W.2d at 181. Instead, the party must "support proportionality complaints with evidence." *State Farm Lloyds*, 520 S.W.3d at 614. And where a responding party's own conscious, discretionary decision, such as how it chooses to store and organize its materials, causes discovery to be burdensome, the burden is not considered "undue." *See In re State Farm Lloyds*, 519 S.W.3d 647, 657 (Tex. App.—Corpus Christi–Edinburg 2015, orig. proceeding) (mem. op.) (citing *ISK Biotech Corp. v. Lindsay*, 933 S.W.2d 565, 569 (Tex. App.—Houston [1st Dist.] 1996, orig. proceeding)). Here, as mentioned, the subpoenas K & L Auto served on the providers contained dozens of requests with multiple subparts seeking a wide array of information regarding the providers' billing rates and practices covering several years. In response, the providers submitted affidavits asserting that "[r]esponding to [the requests] would be unduly burdensome and expensive," in part because the providers' software is not configured to allow searching by "particular health insurance plans, policies, or procedures."

As discussed, K & L Auto substantially narrowed its requests, in a motion and then orally, and the trial court should have focused its analysis on those narrowed requests. The providers made no effort to establish the burdens they would bear to respond to the substantially narrowed requests K & L Auto made at the hearing on its motion for reconsideration. And although a responding party is not required to affirmatively address each modification a requesting party makes to its

discovery requests, the providers' original objections and affidavits failed to provide more than conclusory estimates of the time, effort, and expenses they would incur in responding specifically to the original requests; they simply noted that responding would be burdensome and expensive, particularly because their electronic records software was not configured for searching. *Cf. id.* at 657 (citing *Alford*, 997 S.W.2d at 181) (noting that a claim of undue burden cannot be conclusory—it must be supported by some demonstration or evidence of the burden, and concluding that failure to provide some evidence prevents a trial court from weighing the burden). Thus, those objections were likewise too conclusory to establish that the narrowed requests were unduly burdensome.

We are sensitive to the fact that the providers are not parties to this suit, and we agree that their status as non-parties is relevant to whether the requests are unduly burdensome. But to promote the resolution of disputes based on "what the facts reveal" rather than "what facts are concealed," *Crosstex*, 430 S.W.3d at 394, our rules specifically permit parties to compel non-parties to produce relevant information, *see* TEX. R. CIV. P. 205. Rule 205 addresses this burden by requiring the party requesting the information to fully "reimburse the nonparty's reasonable costs of production," TEX. R. CIV. P. 205.3(f), but it imposes no other special limits on non-party discovery. However, this type of discovery will not be proportional for all non-parties or providers.

Here, any weight the providers' non-party status may have on the burden issue is substantially offset by the fact that the "letters of protection" give the providers a direct financial stake in the resolution of Walker's claims. Unlike most non-parties, the providers who treated Walker pursuant to letters of protection invested themselves in the outcome of this case and the amount of damages recovered, and because of that, they forfeit a degree of the protection our rules

17

afford disinterested third parties who are subjected to third-party discovery. In fact, the providers acknowledge in their briefs that their choice to provide treatment based on letters of protection makes them subject to an "intrusion on their time by repeated depositions on written questions and subpoenas."

We also acknowledge that K & L Auto may be able to obtain some of the requested information—such as federal Medicare and Medicaid reimbursement rates—from other sources. But we do not agree with the providers' argument that all of the requested discovery is unnecessary because some of it is available from other sources and K & L Auto can and did hire experts to opine that the providers' chargemaster rates are unreasonable. Any such opinion must be based on relevant facts and data. As we held in *North Cypress* and reaffirm today, the rates healthcare providers charge to private insurers and public payors and their costs for providing services to a patient constitute relevant facts and data. The trial court could certainly limit discovery by excluding information K & L Auto could obtain elsewhere, but it could not simply deny all access to the relevant facts and information because some of it might be available elsewhere or because K & L Auto hired experts to argue the reasonableness of the rates.

The same is true for proportionality. The damages at issue in *North Cypress* totaled only $8,278.31, yet we upheld the proportionality of those requests to the needs of the case by approving the discovery. Where, as here, the damages are alleged to be $1.2 million, similar requests are even more proportional. Trial courts can, and should, curtail disproportionate requests on a case-by-case basis, but an outright denial of all the narrowed requests here goes beyond a court's discretion. Proportionality limits must be reasonable. *State Farm Lloyds*, 520 S.W.3d at 604. Accordingly, the trial court should reevaluate the proportionality of the narrowed discovery requests in light of

our confirmation that the relevance we recognized in *North Cypress* applies to the personal-injury context.

Trial courts must balance evidence of burdensomeness against the likely benefit of the discovery, considering "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." TEX. R. CIV. P. 192.4. We agree with K & L Auto that, here, the trial court must consider that the requested information, though not dispositive, is relevant and important to a fair, just, and fact-based resolution of this case.

Although K & L Auto does not concede liability for negligently causing the accident or that the accident caused Walker's spine and shoulder injuries, the reasonableness of the $1.2 million in claimed medical expenses is central to K & L Auto's defense. Depriving K & L Auto of key information relevant to that issue will place K & L Auto at a significant disadvantage. Given our conviction that disputes should be resolved on "what the facts reveal," discovery would benefit K & L Auto by allowing it to litigate the issue of reasonableness on level ground. With the requested discovery, K & L Auto can rebut the alleged damages at trial by offering concrete evidence—rather than speculative evidence in the form of affidavits and cross-examination based on generalized data—of the amounts the providers usually charge and accept as payment and the cost to providers for the services and devices provided to Walker. And meanwhile, Walker and the providers may offer evidence at trial explaining why such evidence does not establish what is reasonable under these circumstances and why the rates and costs actually billed are reasonable.

Considering that K & L Auto's requests were narrowed to the type and amount of discovery we approved of in *North Cypress*, that the providers have a financial stake in the outcome of this

19

case, and that the providers failed to provide evidence quantifying the burden of responding to the narrowed requests, we conclude that Walker and the providers failed to establish that the narrowed requests were unduly burdensome. Although the providers failed to meet their burden, the trial court denied the narrowed requests outright. To the extent the trial court denied the narrowed requests based on undue burden, the court abused its discretion.

### 4. Confidentiality, Trade Secret, and Protective Order

Finally, the providers and Walker also objected that the requested information is privileged, confidential, proprietary, and constitutes trade secrets. In *North Cypress*, the hospital made an identical "confidential and proprietary" argument. 559 S.W.3d at 130, 136–37. After granting the requested discovery, the trial court denied the hospital's motion for rehearing, which argued that the "confidential nature of its insurance contracts warrants mandamus relief." *Id.* at 136–37. The trial court responded that "if the parties were unable to agree on [protective] measures," the hospital could request a protective order and the court would consider it. *Id.* at 137. Because nothing in the record suggested that the trial court was unwilling to issue a protective order and the hospital failed to show that such an order would not address its concerns, we declined to quash the discovery on that ground. *Id.*

In light of the relevance of the information sought through K & L Auto's narrowed requests, the trial court should have taken that same approach here. In response to the subpoenas, the providers asserted that the "[i]nformation contained in [their] health insurance agreements . . . constitutes privileged trade secrets" and compliance with the subpoena "would potentially jeopardize [their] ability to conduct business with every health insurer whose confidential trade secrets are exposed." The trial court was then obligated to "preserve the secrecy of [the] alleged

20

trade secret[s] by reasonable means," and a presumption arose in favor of granting a protective order to do so. *See* TEX. CIV. PRAC. & REM. CODE § 134A.006(a). Subsequently, K & L Auto agreed that the court should enter a protective order and assured the court that it was not seeking any "private" or legally protected patient information. Yet the trial court denied the requested discovery without acknowledging that alternative or determining whether it would provide the reasonable protection required.

As we have noted, a protective order can help reduce the potential harm of disclosure. *In re Union Pac. R.R. Co.*, 294 S.W.3d 589, 593 (Tex. 2009) (orig. proceeding) (per curiam). Even if the requested documents contain confidential information or trade secrets, the providers have not shown that an appropriate protective order will not address their concerns. If the trial court denied the motion for reconsideration on the ground that the requested documents contain confidential information or trade secrets, the court should have considered whether it could permit this discovery while protecting the information, yet the record contains no suggestion that the court ever did so. To the extent the court denied the discovery on this ground, we conclude the court abused its discretion.

## B.    No adequate remedy

In addition to showing that the trial court abused its discretion, K & L Auto may obtain mandamus relief only if it also shows it has "no adequate remedy by appeal." *Prudential*, 148 S.W.3d at 135–36. We have acknowledged that when the denial of discovery prohibits a party from effectively preparing for trial, "his remedy by appeal is of doubtful value." *Garcia v. Peeples*, 734 S.W.2d 343, 345 (Tex. 1987) (orig. proceeding). But not every denial of discovery is sufficient for mandamus review. An appellate remedy may not be adequate where (1) an appellate court

cannot cure the discovery error, such as when confidential information is erroneously made public, (2) the party's ability to present a viable claim or defense—or reasonable opportunity to develop the merits of the case—is "severely compromised" so that the trial would be a waste of resources, or (3) discovery is disallowed and cannot be made part of the appellate record such that a reviewing court is unable to evaluate the effect of the trial court's error based on the record. *Walker*, 827 S.W.2d at 843–44. A party's ability to present and develop its case may be severely compromised when the denied discovery goes "to the very heart" of a party's case and prevents it from "developing essential elements" of its claim or defense. *Able Supply Co. v. Moye*, 898 S.W.2d 766, 772 (Tex. 1995) (orig. proceeding).

We conclude that K & L Auto has no adequate remedy by appeal both because it has effectively been denied a reasonable opportunity to develop a defense that goes to the heart of its case, and because a reviewing court will be unable to evaluate the effect of the trial court's denial of discovery from the third-party providers.

The reasonableness of the providers' charges goes to the heart of K & L Auto's defense: if the charges are unreasonable, they are not recoverable. K & L Auto argues the denial of its narrowed requests severely compromised its ability to challenge the reasonableness of the providers' charges. We agree. Walker claims medical expenses in an amount exceeding $1.2 million. K & L Auto seeks discovery it believes will contradict Walker's evidence of reasonableness, and without it, can only present counter-affidavits generally arguing the unreasonableness of the expenses.

As discussed above, denial of discovery here limits K & L Auto to offering speculative evidence rather than the providers' actual agreed rates with insurers and other payors, which we

22

have determined are relevant in this context. Despite the unavailability of the information, Walker challenged K & L Auto's counter-affidavits on the ground that they were not adequately supported by information. While federal Medicare and Medicaid reimbursement rates may be available from another source, much of the requested information is not. To deny this relevant information significantly impairs K & L Auto's ability to argue reasonableness in general, but it also undercuts K & L Auto's ability to convince a jury that any of its speculative information is credible when the providers are arguing that the charges were reasonable without having to reveal relevant underlying data. Thus, the denial prevents K & L Auto from both adequately presenting and defending the heart of its argument against the claimed damages.

In addition, an appeal here would be inadequate because the missing discovery is from a third party and cannot be made part of the appellate record or challenged on appeal, and the providers will not be parties to any appeal. *See In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (per curiam) ("Mandamus relief may be justified when . . . the trial court's discovery order disallows discovery which cannot be made a part of the appellate record, thereby denying the reviewing court the ability to evaluate the effect of the trial court's error."). Although Walker and the providers suggest that K & L Auto waived any complaint about the discovery becoming part of the record by failing to request that it be included in the record or subjected to an in camera review, our precedent has never required such a request. *See Walker*, 827 S.W.2d at 843. The question is whether the discovery *can* be made part of the appellate record, or whether a trial court refused a proper request to do so, and whether an appellate court can review the effect of the error. *Id.* Here, the discovery is not and cannot be part of the record although much of it is likely relevant and critical to the reasonableness of the medical charges, and it would be

23

difficult, at best, to determine on appeal whether the lack of discovery erroneously affected the outcome of the trial. Taking into account the relevant circumstances, the claims and defenses asserted, the type of discovery sought, what it is intended to prove, and the presence or lack of other discovery, we conclude that K & L Auto has no adequate remedy here. *See id.* at 844.

## III.
## Conclusion

We hold that the trial court abused its discretion by denying the requested discovery, as narrowed in K & L Auto's motion for reconsideration and explained at the hearing, considering the circumstances and the applicability of our reasoning in *North Cypress* to this case. We further hold that K & L Auto has no adequate remedy by appeal. Accordingly, we conditionally grant the writ of mandamus and order the trial court to vacate its order denying K & L Auto's motion for reconsideration.

Under *North Cypress*, at least some of the information K & L Auto requested from the providers in its narrowed requests is relevant to the issue of the reasonableness of the providers' charges, and the providers failed to establish that the narrowed requests were overbroad or unduly burdensome and harassing, or that they sought confidential information that could not reasonably be protected. The trial court retains discretion to issue a protective order as necessary to protect any information the providers may establish to be confidential or trade secrets, and to impose any other necessary and appropriate limitations. *See In re Hous. Pipe Line Co.*, 311 S.W.3d 449, 452 (Tex. 2009) (orig. proceeding) (per curiam) (giving trial court permission to rule on issue after vacating prior order). It may also impose reasonable limits on requests it finds disproportionate to the circumstances. But it may not simply deprive K & L Auto from obtaining the narrow categories of information that we have previously held are relevant and discoverable on the reasonableness

24

of medical expenses. We are confident the trial court will comply, and our writ will issue only if it does not.

                                     _____

                                     Jeffrey S. Boyd
                                     Justice

Opinion delivered: May 28, 2021